NO. 19-30193

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent - Appellee, | ) |
| | ) |
| vs. | ) |
| | ) |
| LEX BENNETT GOODWIN, | ) |
| | ) |
| Defendant - Appellant. | ) |
| _____ | ) |

Appeal from the United States District Court
for the District of Idaho, District Court No. 4:17-CR-296-DCN
The Honorable David C. Nye Presiding

APPELLANT'S OPENING BRIEF

Andrew Parnes
Law Office of Andrew Parnes
P.O. Box 5988
671 N First Avenue
Ketchum, Idaho 83340
Phone: (208) 726-1010
Fax:    (208) 726-1187
aparnes@mindspring.com

Attorney for Defendant - Appellant
Lex Bennett Goodwin

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Statement of Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Custody Status  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues on Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.      Did the trial court err by admitting evidence of conversations between
appellant and a woman occurring ten years before trial involving discussions
about raping children, grabbing children inside a store to take naked pictures of
them and having the woman engage in sex acts with her own children?  . . . . . . . 1

2.      Did the trial court err by admitting evidence of photographs found on
appellant's phone of a minor's underwear with an adult penis in the picture?  . . . 1

3.      Was the evidence sufficient for conviction that appellant transported the
images as alleged in Count 6?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4.      Did the trial court err in sentencing appellant to a term of 100 years which
is in reality a sentence of life without the possibility of parole?  . . . . . . . . . . . . 2

Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

1.   THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF
     APPELLANT'S REMOTE PRIOR CONVERSATIONS INVOLVING
     DISCUSSIONS OF RAPING, SEIZING AND PHOTOGRAPHING
     MINORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2.   THE TRIAL COURT ERRED IN ADMITTING THE PHOTOGRAPH OF
     APPELLANT'S PENIS NEAR A GIRL'S UNDERWEAR . . . . . . . . . . 22

3.   THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT
     THE CHARGE OF TRANSPORTING CHILD PORNOGRAPHY . . . . . 23

4.   THE TRIAL COURT'S SENTENCE OF 100 YEARS WAS NOT
     REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certification Pursuant to Circuit Rule 32-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Statement of Related Case Pursuant to Circuit Rule 28-2.6 . . . . . . . . . . . . . . . . 35

Certification of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ii

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Doe v. Glanzer,* 232 F.3d 1258 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Jackson v. Virginia,* 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Riley v. California,* 573 U.S. 373 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Smith v. Marsh,* 194 F.3d 1045 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Alderman,* 601 F.3d 949 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . 3

*United States v. Belflower,* 390 F.3d 560 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . 31

*United States v. Bender,* 290 F.3d 1279 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . 31

*United States v. Bonum,* 604 F.3d 161 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 24

*United States v. Bosyk,* 933 F.3d 319 (4th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Burgess,* 684 F.3d 445 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . 31

*United States v. Calhoun,* 604 F.2d 1216 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . 19

*United States v. Carty,* 520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Chea,* 231 F.3d 531 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Cope,* 527 F.3d 944 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Curtain,* 489 F.3d 935 (9th Cir. 2007) . . . . . . . . . . . . . 12, 16, 18

*United States v. Delmarle,* 99 F.3d 80 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Duran,* 189 F.3d 1071 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 2

iii

*United States v. Edwards,* 69 F.3d 419 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . 14

*United States v. Fall,* 955 F.3d 363 (4th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Gamez-Orduno,* 235 F.3d 453 (9th Cir. 2000) . . . . . . . . . . . . . 28

*United States v. Gonzalez-Torres,* 309 F.3d 594 (9th Cir. 2002) . . . . . . . . . . . . . 2

*United States v. Groenendal,* 557 F.3d 419 (6th Cir. 2009) . . . . . . . . . . . . . . . . 31

*United States v. Henderson,* 649 F.3d 995 (9th Cir. 2010) . . . . . . . . . . . . . . . . . 31

*United States v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 4

*United States v. Hoey,* 508 F.3d 687 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Joey,* 845 F.3d 1291 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Kimler,* 335 F.3d 1132 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . 31

*United States v. Laurienti,* 731 F.3d 967 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . 4

*United States v. Layton,* 767 F.2d 549 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . 19

*United States v. LeMay,* 260 F.3d 1018 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . 14

*United States v. Lyckman,* 235 F.3d 234 (5th Cir. 2000). . . . . . . . . . . . . . . . . . 31

*United States v. Maurer,* 639 F.3d 72 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 31

*United States v. McConney,* 728 F.2d 1195 (9th Cir. 1984) . . . . . . . . . . . . . . . . 2

*United States v. Meyers,* 355 F.3d 1040 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . 31

*United States v. Nelson,* 137 F.3d 1094 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . 2

*United States v. Ressam,* 679 F.3d 1069 (9th Cir. 2012). . . . . . . . . . . . . . . . . . 4

iv

*United States v. Rone,* 598 F.2d 564 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Tisor,* 96 F.3d 370 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Treadwell,* 593 F.3d 990 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . 3

*United States v. Verduzco,* 373 F.3d 1022 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . 2

*United States v. Ward,* 914 F.2d 1340 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Wright,* 373 F.3d 935 (9th Cir. 2004) . . . . . . . . . . . . . . . . . 29, 30

## STATE CASES

*Commonwealth v. Guastucci, Number SJC-12829,* 2020 Mass. LEXIS 648 . . . . 25

## FEDERAL STATUTES

18 U.S.C. § 2252(A)(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 2260A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

18 U.S.C. § 3353(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## FEDERAL RULES

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 14

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL SENTENCING GUIDELINES

USSG §2G2.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

USSG §2G2.1(b)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

USSG §3A1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

USSG §4B1.5(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

## STATEMENT OF JURISDICTION

This is an appeal from a criminal conviction in which sentence was imposed on August 12, 2019, by the Honorable David C. Nye, United States District Court for the District of Idaho following jury trial.  (ER 1.)  The case number below is 17-CR-296-DCN.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over a final order subject to appeal.

A notice of appeal was timely filed.  (ER 72.)

## CUSTODY STATUS

Appellant is in custody on this conviction having been sentenced to a term of 100 years.  His projected release date is May 15, 2104.

## STATEMENT OF ISSUES ON APPEAL

1.     Did the trial court err by admitting evidence of conversations between appellant and a woman occurring ten years before trial involving discussions about raping children, grabbing children inside a store to take naked pictures of them and having the woman engage in sex acts with her own children?

2.     Did the trial court err by admitting evidence of photographs found on appellant's phone of a minor's underwear with an adult penis in the picture?

3.     Was the evidence sufficient for conviction that appellant transported the

1

images as alleged in Count 6?

4.    Did the trial court err in sentencing appellant to a term of 100 years which is in reality a sentence of life without the possibility of parole?

## STANDARD OF REVIEW

"A district court's admission of evidence under Federal Rule of Evidence 404(b) is reviewed for an abuse of discretion. *United States v. Nelson*, 137 F.3d 1094, 1106 (9th Cir.), cert. denied, 525 U.S. 901, 142 L. Ed. 2d 190, 119 S. Ct. 232 (1998)." *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).

Admission of evidence under Federal Rule of Evidence 403 is reviewed "for abuse of discretion. *United States v. Gonzalez-Torres*,  309 F.3d 594, 601 (9th Cir. 2002)." *United States v. Verduzco*, 373 F.3d 1022, 1029-30 (9th Cir. 2004).

Prejudice is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403.

Questions of law are reviewed *de novo*.  *See, e.g., United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984) (en banc), *cert. denied*, 469 U.S. 824.

Sufficiency of the evidence claims are reviewed de novo. *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir. 1999).  "Sufficiency of evidence is satisfied

2

if after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tisor*, 96 F.3d 370, 379 (9th Cir. 1996).

"Under the law of this circuit, it is clear that the right to seek review of the sufficiency of the evidence is waived if the accused fails to make a motion for a judgment of acquittal before the matter is submitted to the jury." *Tisor*, 96 F.3d at 379; *United States v. Ward*, 914 F.2d 1340 (9th Cir. 1990). "Failure to make these motions [makes] appellate review inappropriate unless 'plain error' is present." *United States v. Rone*, 598 F.2d 564, 572 (9th Cir. 1979).

The district court's interpretation of the U.S. Sentencing Guidelines is reviewed *de novo*, the district court's factual findings for clear error, and the district court's application of the Guidelines to the facts for abuse of discretion. *United States v. Alderman*, 601 F.3d 949, 951 (9th Cir. 2009).

"We review the length of the sentence imposed by a district court for substantive reasonableness. *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008). Reversal is not justified simply because this court 'think[s] a different sentence is appropriate.' *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). Rather, this court should only vacate a sentence if the district court's decision not to impose a lesser sentence was 'illogical, implausible, or without

support in inferences that may be drawn from the facts in the record.' *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) (internal quotation marks omitted)." *United States v. Laurienti*, 731 F.3d 967, 976 (9th Cir. 2013).

This Court does not apply a "presumption of reasonableness." *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008). But the substantive reasonableness of a criminal sentence is reviewed under an abuse-of-discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012). "A district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc).

STATEMENT OF THE CASE

On October 25, 2017, appellant was initially charged with one count of transportation of child pornography alleged to have occurred on or about August 3, 2017, and one count of possession of child pornography between February 11, and October 6, 2017.[1] (ER 554.) On January 23, 2018, the government then filed a superseding indictment alleging four counts: (1) sexual exploitation of a minor

---

[1]Appellant did not make his first appearance in federal court until March 28, 2018, even though he had been in state custody since his arrest six months before.

between August and September 2017; (2) attempted sexual exploitation of a minor on August 13, 2017; (3) transportation of child pornography between August 12, 2016 and September 30, 2017; and (4) possession of child pornography on October 6, 2017; and a criminal forfeiture allegation. (ER 550.)

On July 24, 2018, the government filed a second superseding indictment alleging eight counts and a criminal forfeiture allegation:

Count 1: Sexual Exploitation of A Minor on August 3, 2017;

Count 2: Sexual Exploitation of A Minor on August 12, 2017;

Count 3: Sexual Exploitation of A Minor on August 13, 2017;

Count 4: Sexual Exploitation of A Minor on September 30, 2017;

Count 5: Attempted Sexual Exploitation of A Minor on August 13, 2017;

Count 6: Transportation of Child Pornography between August 12, 2016 and September 30, 2017;

Count 7: Possession of Child Pornography on October 6, 2017; and

Count 8: Penalties for Registered Sex Offender.

(ER 542.)

On February 5, 2019, the government filed a Notice of Enhanced Penalties, based upon the underlying conviction alleged in Count 8 of the Second Superseding Indictment. (ER 536.)

5

Appellant proceeded to jury trial beginning on May 20, 2019. At the conclusion of the trial, appellant was convicted of all charges.

The trial court then imposed sentence of 100 years as follows:

Counts 1-5, 50 years on each count, concurrent, with an additional ten years consecutive for Count 8;

Counts 6, 40 years consecutive to Counts 1-5 and 8;

Count 7, 20 years concurrent to Counts 1-6 and 8.

(ER 1.)

## STATEMENT OF FACTS

The Department of Homeland Security received a cyber tip about possible child pornography on September 1, 2017. (ER 115.) After receiving the tip, law enforcement began an investigation. Thereafter, the officers obtained search warrants for the residences of Karisa Tingey and Lex Goodwin. (ER 12-123.)

During the execution of the warrant for the Goodwin residence in Pocatello, Mr. Goodwin spoke with the police and admitted to having multiple email accounts, including lexgoodwin85@gmail.com and lexinpocatello@gmail.com. (ER 125.) Mr. Goodwin believed the phone was in Rupert, but it was located during the search of his car shortly after the interview. During the search of the Tingey residence in Rupert, the police located a laptop Gateway computer.

6

After a forensic examination of the phones and the computer, the police discovered links between the email accounts.  (ER 136.)

Ms. Tingey testified that the computer had several accounts on it and that Mr. Goodwin's was password protected so that she was unable to access his protected account.  (ER 378.)  Images of child pornography were located on the email accounts and on the password protected portions of the computer.  (ER 186.)

A forensic expert testified that he discovered links between the Mr. Goodwin's phone and the computer through a program called Bluestacks, located on the laptop.  (ER 188-189.)  The expert found connections between Goodwin's email accounts and the account on the computer where images of child pornography were located.  (ER 189-193.) The expert testified how he determined that images on the computer came from Goodwin's cell phone.  (ER 199-204.) During direct examination, the prosecutor elicited testimony from the expert that he had looked into the possibility of hacking or other remote connections and did not find any evidence of this.  (ER 195-199.)

A number of images were presented to the jury to support each of the charged counts.  Count One involved pictures taken on August 3, 2017, containing closeup images of the genitalia of Goodwin's 18 month old daughter.   Count Two were close ups of the picture of the child's genitalia taken on August 12, 2017.

7

Count Three were pictures of Goodwin's erect penis depicted with his daughter fully clothed standing in her crib. Count Four involved images taken on September 30, 2017, with his daughter in the crib and his penis over the edge of the crib near, but not touching, his daughter.

Count Five involved images of Tingey's six year old daughter taken on August 12, 2017, when she is fully clothed. The pictures show her underwear below her skirt while she is sitting on a chair. There was no indication that she knew the photos were being taken.

Ms. Tingey testified about her relationship with Mr. Goodwin and his access to the children in their home. Because of her intimate relationship with Mr. Goodwin, she testified that she was able to identify the penis in the images as Mr. Goodwin's and that the underwear belonged to her daughter.

Tia Leap testified about a prior incident with Mr. Goodwin in 2009, which involved him asking her to take sexual pictures of her daughter. She also testified that Mr. Goodwin suggested that he take her daughter's virginity and having grandchildren who could then be abused. In addition, evidence was introduced that Mr. Goodwin encouraged her to seize a random child while inside Walmart and to take the child to a dressing room where she could take nude photos of the

child.[2]

## SUMMARY OF ARGUMENT

The district court erred by admitting evidence that years before trial,

appellant conversed with a woman in another state and during those conversations

appellant asked the woman to engage in sex acts with her children and photograph

those acts. Appellant also told the woman that he wanted to impregnate her

daughter and then rape his grandchildren. Appellant also told the woman that she

should seize a random child inside a Walmart store for the purpose of taking nude

photos of the child in the store dressing room.

Over appellant's objection, the district court allowed the government to

present this highly inflammatory evidence in its case-in-chief; the defense did not

present evidence at trial. This evidence was highly prejudicial and its admission

requires reversal of appellant's conviction.

Over objection, the district court also admitted a photograph of what was

identified as appellant's penis near a young child's underwear. This evidence was

of slight relevance and also highly prejudicial.

Appellant was charged in Count 6 with transporting child pornography.

---

[2]The details of this evidence will be addressed below in Argument 1
challenging the admission of this prior act evidence as a violation of Fed. R. Evid.,
403.

The only evidence to support this charge was the location of the items on both appellant's phone and computer which was set up to back-up through an automatic program located on the computer.

The trial court imposed a sentence of 100 years, the equivalent of a life without parole sentence. The government charged appellant for conduct that provided a maximum sentence of 100 years. Thereafter, the government filed a superseding indictment, separating into three additional counts, the conduct previously charged, added a count of being a registered sex offender and then late filing a notice of enhanced penalties. The combined effect of these changes increased the maximum penalty to 320 years, for the identical conduct charged before.

Given the facts of this case, which consisted of appellant taking photographs of his 18 month old daughter's genitalia with appellant's penis exposed but not touching with no evidence of distribution of the photos, the sentence imposed was unreasonable.

ARGUMENT

1. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF
APPELLANT'S REMOTE PRIOR CONVERSATIONS INVOLVING
DISCUSSIONS OF RAPING, SEIZING AND PHOTOGRAPHING
MINORS

Over a few weeks in 2009, appellant had a number of texting and phone

conversations with a woman in Indiana through an internet website.  (ER 406-

407.)  In these conversations, appellant first asked the woman to take sexual

pictures of her 11 year old daughter.  (ER 410-411.)  The woman testified that

appellant then asked her to perform a sexual act on her daughter.  (ER 411.)  The

text messages were introduced as a trial exhibit.  (Trial Exhibit 1116.)  The woman

testified that the texts encouraged her to take photographs of her engaging in sex

acts with her daughter and other children, including fingering them and taking

their virginity, and then forward them to appellant.  (ER 416-419.)  She also

testified that appellant provided her with a website which contained child

pornography.  (ER 418.)

The texts also contained a request that the woman go to a Walmart, seize a

child in the store, and to take the child to a dressing room to photograph the child

nude.  (ER 433.)

She testified that "He wanted to live together for the sole purpose of him

11

raping my children, having children with them so that he could rape my grandchildren." (ER 412.)

As a result of the woman contacting Idaho law enforcement, appellant was interviewed in 2009 and admitted his texting with the woman, claiming that the sexual fantasies were her idea and he only went along with them. (ER 430.) When confronted with the texts regarding taking a child in Walmart, appellant stated he had heard someone else had done that but he would not tell the officer any information as "it would expose them." (ER 434.) A tape of the interview was played for the jury. (Trial Exhibit 1131.)

The trial court admitted this evidence over appellant's Rule 403 objection. In doing so, the court held

> The United States expresses concern that Goodwin will argue that he did not upload the images on his phone (that another person did or that his phone was hacked), and that the images and accounts on the computer (as it was a shared computer) are likewise not his. The Court sees this as a realistic concern. First, while there is no way to know whether Goodwin will actually make such an argument at trial, waiting until that time to make such a ruling is not feasible. TC lives in Indiana. *The Court cannot wait until Goodwin asserts such a defense to determine whether TC will be allowed to testify on these matters—by then it will be too late.* Furthermore, it is within the United States' purview to anticipate, and address, defenses in its case-in-chief. *United States v. Curtain*, 489 F.3d 935, 940 (9th Cir. 2007)("Federal courts repeatedly have held that the government may offer evidence in its case-in-chief in anticipation of an expected aspect of the defense.").

Second, even with the *overwhelming evidence* (including Exit data) that shows Goodwin's phone, email accounts, and a computer he had access to all contained child pornography, the Court has not seen as much evidence linking Goodwin to those items— aside from the normal inference that a person uses his or her own devices and accounts.

In short, it appears the evidence regarding Goodwin's conversations with TC is critical to the Government's case. More importantly, however, the Court finds that this information is highly relevant, as Goodwin's prior behavior and communications with TC are strikingly similar to the charges in this case. The prior conversations are probative on the issue of whether Goodwin was the person responsible for producing the images of the victims, whether he intended the images to be sexual in nature, and whether he knowingly and intentionally possessed and transported other images of child pornography. Accordingly, it seems clear that the United States does not want to present this evidence simply to paint Goodwin in a bad light, but to show Goodwin's "motive, intent, knowledge and identity as it relates to counts one through five, as well as his motive, intent, knowledge, identity, and absence of mistake as it relates to the other counts, which allege possession and transportation of child pornography." Dkt. 28, at 15. This is a reasonable application of Rule 404(b).

While there may be some prejudicial effect in light of the disturbing content of the communications, this is unfortunately a case where much more disturbing content will be presented to the jury. After all, these communications contain no images or videos—they are simply text messages. In sum, this material, in and of itself, will not be so inflammatory as to prohibit its use and the probative value outweighs any prejudice that may result.

(ER 62-64 (footnotes omitted, italics added).)

The trial court erred for several reasons. First, the court did not follow the

dictates of *Doe v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000). "Because of the

inherent strength of the evidence that is covered by Fed. R. Evid. 415[3], when

putting this type of evidence through the Fed. R. Evid. 403 microscope, a court

should pay 'careful attention to both the significant probative value and the strong

prejudicial qualities' of that evidence.  *See Guardia*, 135 F.3d at 1330."

This Court went on to set forth the proper method for review of the rule 403

analysis in admitting the evidence:

> [T]he factors that the court should consider in deciding whether to
> admit this type of evidence should include the similarity of the prior
> acts to the acts charged, *see United States v. Edwards*, 69 F.3d 419,
> 436 (10th Cir. 1995) (engaging Fed. R. Evid. 403 analysis of
> evidence of prior bad acts admissible under Fed. R. Evid. 404(b)), the
> closeness in time of the prior acts to the acts charged, *see id.* (same),
> the frequency of the prior acts, the presence or lack of intervening
> circumstances, and the necessity of that evidence beyond the
> testimonies already offered at trial, *see Guardia*, 135 F.3d at 1331.  In
> light of the sensitive nature of the evidence proffered, it is important
> that the district court fully evaluate the factors enumerated above, and
> others that might arise on a case-by-case basis, and make a clear
> record concerning its decision whether or not to admit such evidence.
> *See id.*

*Glanzer*, 232 F.3d at 1268.

The district court failed to enumerate each of these factors, instead making a

a generalized finding that the evidence was less inflammatory than the photos that

---

[3]Fed. R. Evid. 414 is the equivalent rule in the criminal context.  See, *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), adopting the *Glanzer* analysis in the criminal case context.

would be admitted in the prosecution's case.

The evidence is highly inflammatory. While the trial court focused on the nature of the images alleged in the charged counts in the instant case, the possession of these images is tame in comparison to allegations that he encouraged a woman to engage in a sex act with her daughter for the purpose of taking photos and the discussion that appellant wanted to *rape her daughters* so that he could then *rape his grandchildren.* And the testimony did not stop there – it included admissions that he asked the woman to grab an unsuspecting random child inside a store for the purpose of taking nude photos of the child in the store's dressing room.

Such testimony is highly inflammatory and unfairly prejudicial in this case. Appellant was charged with several counts of exploitation of his own minor child and transporting and possessing child pornography. The government bore the burden of proving these charges beyond a reasonable doubt. Evidence that 10 years earlier, appellant encouraged not only the sexual exploitation of random children in Walmart, but the *rape* of young children for the sole purpose of procreating additional children to then rape cemented his guilt of the charges. This evidence depicted appellant as an abhorrently evil and vile man, and by doing so, relieved the government of its burden of proving his current day charges. Once

the jury heard this evidence, there could be no doubt in their minds that such a repugnant man must be guilty–no additional proof was needed.

Moreover, when the testimony was introduced, the trial court did not provide any instruction to the jury on how to consider it. Only in closing jury instructions, did the court inform the jury how to consider the evidence. Of course, by then, the outrageous evidence of events that occurred ten years before was implanted in the jurors' minds, without any substantial guidance on the limited nature of the testimony.

Contrary to the government's pre-trial arguments and the district court ruling, this evidence was not admissible in the prosecution's case-in-chief solely on speculation that appellant might assert some defense that the current images were not taken by him or contained on his computer. The trial court's reliance on *Curtain* was error in this case. There, the defendant was charged with traveling across state lines to engage in a sex act with a minor as the result of a "sting" operation. Before trial, the defendant conceded that the sole issue in the case was his intent: "Thus, the line was drawn. Curtain's defense was a matter of record, and he would not seriously contest the other elements of the crimes charged against him. The trial would be about the sole issue of intent and what was in Curtain's mind during his undisputed conduct with 'christy13.'" *Curtain*, 489 F.3d

16

at 939. In pre-trial motions, appellant here put forth no such specific defense and there was no reason to allow the government to elicit this inflammatory testimony during its case-in-chief. The district court's determination that it would be "too late" if this evidence were permitted only if rebuttal is nonsensical. As the court itself noted, the government's evidence against appellant, even without this prior bad act evidence, was "overwhelming." (ER 63.)

Moreover, at trial, defense counsel's opening statement did not set forth a specific defense. His entire opening statement involved only the following:

> Ladies and gentlemen, just like we talked about yesterday, when a person is charged with a crime, under our Constitution, that person is presumed to be innocent of that crime until found guilty by a jury.
>
> Now, a jury cannot find a person guilty of a crime until there is enough evidence presented so that the jury can conclude beyond a reasonable doubt that person is guilty. It is completely up to the prosecutor, up to the government to show you enough evidence so that you can be sure, beyond a reasonable doubt, that my client is guilty of what he's charged with.
>
> It's completely up to you as to whether or not the government has shown you enough evidence so you can be sure, beyond a reasonable doubt, that my client's guilty.
>
> You can take the evidence that the government gives you and decide, "Well, yes. Obviously, this person is guilty of these crimes." Or you can take it and decide, "Well, there's some holes here. I'm still not sure. Therefore, I'm going to find this person not guilty." The decision as to whether or not the government has proven its case beyond a reasonable doubt is completely up to you.
>
> Ladies and gentlemen, you have heard what the evidence is going to be, and this evidence is potent. You are going to see some

17

pretty disturbing stuff today. And what I would ask of you is, as you watch this, as you take in this evidence, that you not make any decisions until you have heard all the evidence and until you have heard both sides.

Don't let the images and the evidence that you see and hear stir up your emotions to the point where you find my client guilty before you have heard everything. My client deserves a fair trial.

Ladies and gentlemen, after all the evidence is presented, we believe that there will be reasonable doubt as to whether he's guilty, and so we will ask you for a verdict of not guilty. Thank you.

(ER 105-106.)

Thus, unlike the facts in *Curtain*, the defense here did not present a specific defense to the charge that would have required the introduction of this evidence in the prosecution's case-in-chief to rebut.

Furthermore, the trial court relied upon the potential inconvenience of having an out-of-state witness travel to Idaho and then have her testimony excluded – holding "by then it would be too late." (ER 62.) The mere fact that the government might have to bring an out of state witness to Idaho would not make consideration of admission of the testimony "too late." The government has incredible resources to prosecute criminal cases; it was error to rely on this factor to permit the testimony before any defense, other than reasonable doubt, was raised before or during trial.[4] When contrasted with the life sentence appellant

---

[4]Defense counsel also renewed his objection before the witness testified at trial; however, the court did not reconsider its pre-trial ruling, but merely relied on

was facing and the 100 year sentence imposed, it was an abuse of discretion for

the court to permit the introduction of the evidence in the government's case-in-

chief for this reason.

The introduction of this evidence was prejudicial.  See, e.g. *United States v.*

*Calhoun,* 604 F.2d 1216 (9th Cir. 1979); *United States v.  Layton*, 767 F.2d

549 (9th Cir. 1985).   The prosecutor first relied on this evidence in her opening

statement, setting forth in some detail the inflammatory nature of the evidence.

(ER 100-102.)   During the presentation of the evidence, the horrendous details of

this evidence was presented to the jury even though the defense had not raised

Goodwin's lack of intent as an issue.  Thus, the jury heard that Goodwin not only

discussed his interest in child pornography, the jury was told not only that he

wanted to rape an eleven year old girl but that he want to impregnate her so that he

could then rape his grandchildren.  But the government did not stop there; it also

presented testimony that appellant encouraged Tia to grab a child in a store and to

take that child to a dressing room to take nude photographs. What could create

more prejudice in a jury than testimony that appellant was encouraging others to

seize a random child in a public place to assault them; this is every parent's worst

nightmare.  And the jury heard testimony and a tape where appellant admitted this

---

its written decision.  (ER 407.)

outrageous conduct but deflected responsibility for it. There is no way that jurors could convict appellant solely on the evidence pertinent to the charges in the indictment given such unfair and inflammatory testimony. Given this grossly prejudicial evidence, the jury's verdict was pre-ordained.

To ensure that this was the case, the trial court did not instruct the jury, either in the initial jury instructions or when the evidence was first admitted during the trial, on how to construe this evidence for the reasons the district court admitted the evidence under Evidence Rule 404(b). Thus, the trial court did not instruct the jury pursuant to Ninth Circuit Model Criminal Jury Instruction 2.10 to limit consideration of this evidence.[5]

---

[5]This model instruction reads:

You [have heard testimony] [are about to hear testimony] [have seen evidence] [are about to see evidence] that the defendant [summarize other act evidence]. This evidence of other acts [was] [will be] admitted only for [a] limited purpose[s]. You may consider this evidence only for the purpose of deciding whether the defendant:

[had the state of mind, knowledge, or intent necessary to commit the crime charged in the indictment;]
    or
[had a motive or the opportunity to commit the acts charged in the indictment;]
    or
[was preparing or planning to commit the acts charged in the indictment;]
    or

When the court did provide an instruction, the jury was only informed

pursuant to Model Jury instruction 2.11 based on its admissibility under Evidence

_____

> [acted with a method of operation as evidenced by a unique pattern
> [describe pattern];]
>> or
> [did not commit the acts for which the defendant is on trial by
> accident or mistake;]
>> or
> [is the person who committed the crime charged in the indictment. You may
> consider this evidence to help you decide [describe how the evidence will be used
> to prove identity];]
>> or
> [describe other purpose for which other act evidence was admitted.]
>
> Do not consider this evidence for any other purpose.
>
> Of course, it is for you to determine whether you believe this
> evidence and, if you do believe it, whether you accept it for the
> purpose offered. You may give it such weight as you feel it deserves,
> but only for the limited purpose that I described to you.
>
> The defendant is not on trial for committing these other acts. You
> may not consider the evidence of these other acts as a substitute for
> proof that the defendant committed the crime[s] charged. You may
> not consider this evidence as proof that the defendant has a bad
> character or any propensity to commit crimes. Specifically, you may
> not use this evidence to conclude that because the defendant may
> have committed the other act[s], [he] [she] must also have committed
> the act[s] charged in the indictment.
>
> Remember that the defendant is on trial here only for [state charges],
> not for these other acts. Do not return a guilty verdict unless the
> government proves the crime[s] charged in the indictment beyond a
> reasonable doubt.

rule 414:

> You have heard evidence that the defendant may have attempted a
> similar offense of attempted sexual exploitation of a child in 2009.
> You may use this evidence to decide whether the defendant
> committed the act charged in the Second Superseding Indictment.
> You may not convict the defendant simply because he may have
> committed other unlawful acts. You may give this evidence such
> weight as you think it should receive or no weight.

( ER 455-456.)

Thus, the court never informed the jury how to consider this evidence for

the purpose admitted and the jury was given free rein to convict appellant because

they believed he was a bad person who committed the acts in 2009.[6]  Therefore,

the convictions must be reversed.

## 2.  THE TRIAL COURT ERRED IN ADMITTING THE PHOTOGRAPH OF APPELLANT'S PENIS NEAR A GIRL'S UNDERWEAR

Appellant objected to the introduction of images that consisted of a man's

penis with a young girl's underwear on his stomach under Evidence Rule 403.  No

child was in the picture.  The trial court admitted the evidence under Rule 404(b)

on the basis that it demonstrated appellant's interest in children.  "[These images

depict behavior that is consistent with an interest in children and sex and are part

---

[6]The district court did instruct the jury in the language of 2.10 in regard to a
few exhibits which were unrelated to the testimony regarding the 2009 incident.
(ER 455.)

of the story regarding the crime Goodwin is charged with—in other words, this evidence is related to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Enid. 404(b)."  (ER 66.) However, the trial court did not address appellant's 403 objection.

Assuming there was some relevance to the images, their admission was prejudicial.  There was no reason to admit them for purposes of identification as the identification of appellant was made from other images on which the charged offenses were based.  While these images are less prejudicial than the testimony about the prior acts set forth above, when combined with the prior acts evidence, the impact on the jury was likely immense and the convictions must be set aside.

3.    THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT
      THE CHARGE OF TRANSPORTING CHILD PORNOGRAPHY

Appellant was charged in Count Six with a violation of transporting child pornography in violation of 18 U.S.C. § 2252(A)(a)(1), between August 12, 2016 and September 20, 2017.

In relevant part, the jury was instructed as follows:

First, on or between August 12th, 2016, and September 20th, 2017, the defendant knowingly transported child pornography; Second, the child pornography was transported using any means and facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including a computer.

(ER 464.)

There was not sufficient evidence to support the conviction. See, *Jackson v. Virginia,* 443 U.S. 307 (1979). Here the sole evidence to support this count was the fact that images were located both on appellant's phone and his computer. The expert testified that the computer contained a Bluestacks program which linked the computer to the cell phone. The testimony indicated that there were links within the Bluestacks program which were also connected to appellant's emails.

There was no evidence to show that the operator of the systems needed to take any further action as to a specific image in order for the images to appear on the cell phone, the email accounts and the computer.

Without more, there is not sufficient evidence to demonstrate that appellant knowingly transported the images from one device to another. The images from one device would have been automatically saved to the other devices. With the advent of cloud computing and automatic sharing, the mere sharing between computers does not support a conviction for knowingly transporting child pornography. Thus, there was no transportation in this case.

> The key to the distinction lies in the degree of intentionality demonstrated by the user, which may depend on the software used. For certain software, as here, the inference that an upload implies intentional possession may be warranted. See *United States v. Bonum*, 604 F.3d 161, 166 (4th Cir. 2010). The advent of cloud computing,

24

however, cautions against applying this inference blindly. See Riley
v. California, 573 U.S. 373, 397 (2014) ("Cell phone users often may
not know whether particular information is stored on the device or in
the cloud"). A computer user who, intentionally or inadvertently,
places a file in a cloud storage service may have intentionally
acquired that file and stored it on his or her computer, or may have
inadvertently saved it to cloud storage through browsing an
innocuous webpage. See *United States v. Bosyk*, 933 F.3d 319, 346
(4th Cir. 2019) (Wynn, J., dissenting). "Cloud" services often
automatically back up data with no intentional action by the user. See
Comment, *Child Pornography Statutes and the Cloud: Updating
Judicial Interpretations for New Technologies,* 57 Hous. L. Rev. 727,
748 (2020) ("If a device uploads or backs up visual depictions by
default, it is not clear that the user 'knowingly' transported the visual
depictions"). See also *Williams vs. Apple, Inc.*, U.S. Dist. Ct., No.
19-CV-04700, slip op. at 2 (N.D. Cal. Mar. 27, 2020) (quoting Apple
terms of service: "When iCloud is enabled, your content will be
automatically sent to and stored by Apple"). See, generally, Svenson,
*Backup in the Modern Law Firm*, 94 Mich. B.J. 54 (2015).

*Commonwealth v. Guastucci*, No. SJC-12829, 2020 Mass. LEXIS 648, at *18 n.5
(Oct. 14, 2020)

Here the evidence in the light most favorable to the government was that

appellant's devices were linked and that the images were found on more than one

device.  But since the devices all were shown to belong to appellant, there was not

sufficient evidence that he transported them rather than it being a mere automatic

backup.

This case is distinguishable from *United States v. Fall,* 955 F.3d 363 (4th

Cir. 2020).  There the defendant uploaded images from his laptop's hard drive to

an online file-sharing website, On that basis the court concluded there was

sufficient evidence of transportation. In contrast, here the only evidence was that

the images were located on several devices all belonging to the appellant and there

was no evidence that he uploaded to any external website.

Because no acquittal motion was made in the trial court, this Court reviews

the sufficiency of the evidence for plain error. That standard is met here because

the mere automatic copying of items on appellant's own devices does not

constitute a transportation under the law. While there was certainly sufficient

evidence that he possessed the images containing child pornography, the mere

possession of them on more than one device does not meet the required further

element of transportation.

The trial court imposed a forty-year consecutive sentence on this Count and

reversal requires resentencing should the government not seek to retry appellant

on Count Six.

4.  THE TRIAL COURT'S SENTENCE OF 100 YEARS WAS NOT
    REASONABLE

When the government filed the superseding indictment in January 2018, it

was fully aware of all the potential charges against appellant. Nevertheless, six

months later, the government sought a new indictment to add three additional

counts, by separating out individual dates from Count 1 of the superseding

indictment which charged the same allegation of sexual exploitation of a minor

over the same period of time. (Cf. ER 550-551 with 542-544.) The new

indictment also added Count 8 based upon appellant being a registered sex

offender, a fact also known by the government for almost a year before the July

2018 indictment. Then, almost seven months later, the government filed a notice

of enhanced penalties based on appellant's prior conviction, involving an adult

victim. (ER 536.) By that time, appellant had filed three motions for continuance

of trial and it was obvious that this case would be proceeding to trial.

If convicted of all the charges contained in the superseding indictment,

appellant would have faced a minimum sentence of 15 years and a maximum

sentence of 100 years, assuming all counts were run consecutively. By filing the

second superseding indictment, the government doubled the possible maximum

sentence and increased the minimum sentence to 25 years. Not satisfied with that

maximum, the government filed its notice of enhanced penalties which increased

the minimum sentence to 35 years and the maximum sentence to *320 years*, which

sentence the government recommended (PSR 5), even though no new facts

were uncovered during the pendency of the case. The inescapable conclusion

drawn form the government's continuing increased charging is that appellant was

27

being punished for the exercise of his right to trial.[7]

This Court must consider the reasonableness of the sentence in light of the procedural history which *tripled* the maximum sentence without the discovery of any new crimes. At the time of sentencing, appellant was 34 years old; even imposition of the minimum mandatory sentence of thirty five years after conviction of the second superseding indictment would keep him in prison until he was well into his sixties. The sentence imposed is actually a life without parole sentence.

The trial court stated its reasons for imposing its sentence in the following terms:

> In other words, the sentence I intend to impose is less than the guideline range request by the government, but only because I believe that the sentence I am going to give is sufficient but not greater than necessary, not because I am giving a downward adjustment or deviation to benefit the defendant.
> The defendant has already repeatedly demonstrated to me and to society that you cannot function withing the norms and the law with regard to your sexual behavior. You have been given multiple

---

[7]It is conceded that such pre-trial charging decisions do not constitute vindictive prosecution. "Vindictiveness claims are, however, evaluated differently when the additional charges are added during pretrial proceedings, particularly when plea negotiations are ongoing, than when they are added during or after trial." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000). Nevertheless, this Court should consider the increased charging in relation to the reasonableness of the sentence which should be based on appellant's criminal conduct, not merely the charging by the government.

opportunities to correct your unlawful behavior with the use of a
retained jurisdiction, prison, and community supervision.    You have
chosen to not comply on repeated occasions.

      Your psychosexual evaluations, including diagnostic tests and
full disclosure polygraphs, along with your repeated unlawful
behavior, indicate you are a high to moderate risk to reoffend.  Based
on all of those factors, I have developed the sentence I think is
appropriate in this case and that meets the requirement of being
sufficient but not greater than necessary. . .

(ER 43-44.)

In looking at the reasonableness of the sentence, this Court should not only
look at what was proven at trial but what the facts did not demonstrate.  Appellant
did not engage in the commercial distribution of any images, even the ones he did
not produce; nor did he exchange any images with others.  The content of the
images, while disturbing, did not involve any sexual acts, such as penetration.  Cf.
*United States v. Wright*, 373 F.3d 935 (9th Cir. 2004) where "the offense conduct
that supports this count consists of James's production of images of himself
engaging in sexually explicit conduct with his 11-month old son. According to the
pre-sentence report, 'the depictions consisted of actual and simulated sexual
intercourse, including genital-genital, oral-genital, and anal-genital actual and
simulated sexual intercourse.' The images produced show James inserting his erect
penis into the rectum and mouth of his 11-month old son."  This Court upheld
sentences of fifteen and twenty years for the co-defendants.

Moreover, as argued above, the transportation charge here was from one of appellant's own devices to another.

Finally, while there was only one objection to the guideline calculations based on the age of the victim in Count 5, there are several areas in the calculations which would warrant consideration under 18 U.S.C. § 3353(a). First, based solely on the age of the victim in Counts 1-4, appellant received an eight offense level increase; 4 for her being under twelve (§2G2.1(b)(1)), and 4 for her being an infant or toddler (§2G2.1(b)(4)(B)). Whether this amounted to prohibited double counting under the guidelines has never been decided by this Court. Under the prior guidelines, this Court did hold that a defendant could have his offense level increased under §2G2.1(b)(1) and receive an additional two level increase under the vulnerable victim guideline, §3A1.1(b). See, *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004).

In 2016, the guidelines were amended to add §2G2.1(b)(4)(B) and the commission added a comment that "If subsection (b)(4)(B) applies, do not apply §3A1.1(b)." Commentary to § 2G2.1. There is no indication how this should be applied in connection with subsection (b)(1), nor any indication why the offense level increase went from 2 under the vulnerable victim to 4 under the infant or toddler section. Given the prior case law, the vulnerable victim section was used

30

primarily because of the increased pain and suffering likely to be inflicted on an

infant or toddler from the sexual act and the reasons for the amendment reflected

that consideration.[8]  USSG Guidelines Manual, Appendix C, Amendment 801.

_____

[8]In making its determination, the Commission was informed by case law indicating that most circuits have found depictions of the sexual abuse or exploitation of infants or toddlers involving penetration or pain portray sadistic conduct. See, e.g., *United States v. Hoey*, 508 F.3d 687, 691 (1st Cir. 2007) ("We agree with the many circuits which have found that images depicting the sexual penetration of young and prepubescent children by adult males represent conduct sufficiently likely to involve pain such as to support a finding that it is inherently 'sadistic' or similarly 'violent' . . . ."); *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996) ("[S]ubjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic . . . ."); *United States v. Maurer*, 639 F.3d 72, 79 (3d Cir. 2011) ("[W]e join other circuits in holding that the application of §2G2.2(b)(4) is appropriate where an image depicts sexual activity involving a prepubescent minor that would have caused pain to the minor."); *United States v. Burgess*, 684 F.3d 445, 454 (4th Cir. 2012) (image depicting vaginal penetration of five-year-old girl by adult male, which would "necessarily cause physical pain to the victim," qualified for sentencing enhancement under §2G2.2(b)); *United States v. Lyckman*, 235 F.3d 234, 238–39 (5th Cir. 2000) (agreeing with the Second, Seventh, and Eleventh Circuits that application of subsection (b)(4) is warranted when the image depicts "the physical penetration of a young child by an adult male."); *United States v. Groenendal*, 557 F.3d 419, 424–26 (6th Cir. 2009) (penetration of a prepubescent child by an adult male constitutes inherently sadistic conduct that justifies application of §2G2.2(b)(4)); *United States v. Meyers*, 355 F.3d 1040, 1043 (7th Cir. 2004) (finding vaginal intercourse between a prepubescent girl and an adult male sadistic); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (images involving the anal penetration of minor boy or girl adult male are per se sadistic or violent within the meaning of subsection (b)(4)); *United States v. Henderson*, 649 F.3d 995 (9th Cir. 2010) (vaginal penetration of prepubescent minor qualifies for (b)(4) enhancement); *United States v. Kimler*, 335 F.3d 1132, 1143 (10th Cir. 2003) (finding no expert testimony necessary for a sentence enhancement [(b)(4)] when the images depicted penetration of prepubescent children by adults); *United*

Nevertheless, the Commission stated that the four offense level increase is intended "to apply to any sexual images of an infant or toddler." *Id.*

Thus, even if the four level increase was proper in this case, the fact that the images in Counts 1-5 did not involve any sadistic, masochistic or violent images is a reason to depart from the guidelines.

Second, because most pornography is contained on computers, judges within the District of Idaho often do not increase by the two level increase set forth in the guidelines or consider that under section 3353(a). Third, in regard to appellant's criminal history, under USSG §4B1.5(a)2), he was automatically determined to be a category V, although he otherwise would have been a level III. Finally, the court imposed the mandatory ten-year consecutive sentence under 18 U.S.C. § 2260A as well as increasing appellant's criminal history pursuant to §4B1.5(a)(2). While this Court has held that the Commission did not intend to preclude application of the guideline for a defendant also convicted of the registration violation, the trial court did not commit procedural error in its guideline calculation. *United States v. Joey*, 845 F.3d 1291 (9th Cir. 2016). However, this Court noted that "[w]hile our conclusion that the district court did

---

*States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002) (photograph was sadistic within the meaning of subsection (b)(4) when it depicts the "subjugation of a young child to a sexual act that would have to be painful").

not make any procedural error in calculating the Guidelines sentencing range does not foreclose the argument that application of both §§ 4B1.5 and 2260A produces a recommended sentence that is substantively unreasonable and overstates a defendant's culpability, Joey has not specifically and distinctly raised a substantive unreasonableness claim in his opening brief, and we therefore do not consider it. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)." *Id.* 1299, n. 9. As this issue is squarely addressed here, this Court must consider the impact of these factors in considering the reasonableness of the sentence imposed in this case.

In light of the facts presented at trial and given appellant's history, a life without the possibility of parole was not reasonable in this case. Indeed, the sentencing commission data reflect that both the median and the mean for similar violations is closer to 40 years; and these cases often involve commercial production and distribution of child pornography. Moreover, a sentence closer to the minimum mandatory of 35 years would have been sufficient but not more than necessary in this case.[9]

---

[9]Defendant's counsel requested a 35 year sentence in his written memorandum (PSR 29); however, at the sentencing hearing, counsel inexplicably requested a sentence of no more than 20 years, even though this was not statutorily permitted. (ER 34.)

33

Had appellant requested or been granted any one of the above guideline adjustments, his guideline range would have been reduced to as little as a minimum of 30 years. In that light, appellant's requested sentence of 35 years would have been a reasonable one. Instead, the government inflated the charges and potential punishments to the point where the trial court did not feel that sentence was proper; had appellant faced a significantly reduced maximum sentence, the trial court is likely to have imposed a lower sentence. Given the unique circumstances of this case, the sentence of 100 years is not reasonable and this Court should remand for resentencing, even if appellant's convictions are affirmed.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court reverse appellant's convictions and remand for a new trial; in the alternative, if this Court affirms the convictions, it is requested that this Court remand for a new sentencing hearing.

Dated: November 19, 2020.

Respectfully submitted by,

s/ Andrew Parnes
Andrew Parnes
Attorney for Defendant/Appellant

34

## CERTIFICATION PURSUANT TO CIRCUIT RULE 32-1

Pursuant to Ninth Circuit Rule 32-1 and Fed. R. App. P.32(a)(7)c, I certify that the attached opening brief is proportionateley spaced, has a typeface of 14 points or more and contains 8,271 words.

DATED: November 19, 2020.

/s/ Andrew Parnes
Andrew Parnes


## STATEMENT OF RELATED CASE PURSUANT TO
## CIRCUIT RULE 28-2.6

Pursuant to Ninth Circuit Rule 28-2.6, I am unaware of any related cases.

DATED: November 19, 2020.

/s/ Andrew Parnes
Andrew Parnes

## CERTIFICATION OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 19, 2020.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants are not registered CM/ECF users. I mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participant on November 19, 2020.

> Lex Bennett Goodwin, #19479-023
> USP Terre Haute
> U.S. Penitentiary
> P.O. Box 33
> Terre Haute, IN  47808

> s/Andrew Parnes
> Andrew Parnes