U.S.C.A. No. 19-30193

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

vs.

LEX BENNETT GOODWIN,

Defendant/Appellant.

## GOVERNMENT'S ANSWERING BRIEF

On Appeal from the United States District Court
for the District of Idaho
District Court No. 4:17-cr-00296-DCN
The Honorable David C. Nye, Chief District Court Judge

RAFAEL M. GONZALEZ, JR.
Acting United States Attorney
KASSANDRA MCGRADY
Assistant United States Attorney
District of Idaho
1290 W. Myrtle St. Suite 500
Boise, ID 83702-7788
Telephone: (208) 334-1211
Attorney for Plaintiff/Appellee
United States of America

ANDREW PARNES
Law Office of Andrew Parnes
P.O. Box 5988
671 N. First Avenue
Ketchum, Idaho 83340
Telephone: (208) 726-1010
Attorney for Defendant/Appellant
Lex Bennett Goodwin

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................i

TABLE OF AUTHORITIES ................................................. iii

JURISDICTION, TIMELINESS, AND BAIL STATUS .......................... 1

ISSUES PRESENTED ...................................................... 1

    1.    Did the district court abuse its discretion by admitting evidence pursuant to Rule 414, with a limiting instruction, of the Defendant's other acts of sexual misconduct? ................................................. 1

    2.    Did the district court abuse its discretion in admitting photographs located on the Defendant's cellphone of his penis with E.T.'s underwear? .................................. 1

    3.    Did insufficient evidence support the jury's conclusion that the Defendant transported child pornography within the meaning of the statute? ......................... 2

    4.    Did the district court render a substantively unreasonable sentence when it sentenced the Defendant to a below guideline sentence of 100 years? ........ 2

STATEMENT OF THE CASE ................................................ 2

SUMMARY OF ARGUMENT ................................................ 13

ARGUMENT ............................................................. 14

I.    The district court was well within its discretion when it admitted evidence pursuant to Federal Rule of Evidence 414, with a limiting instruction, of the Defendant's prior acts of sexual misconduct. .................................................... 14

    A.    Standard of review .............................................. 15

i

B.    The district court properly admitted the evidence after careful weighing under the correct, substantive standard..................................................................15

    1.    The prior acts are strikingly similar to the charged conduct.......................................................17

    2.    The prior acts were not too remote.........................19

    3.    The prior acts were frequent. ................................20

    4.    There are no intervening circumstances that weigh against the admission of the evidence.........21

    5.    The prior acts evidence was necessary...................22

C.    The district court properly instructed the jury regarding the 414 evidence..................................................25

D.    Any error in admitting the evidence was harmless. ............28

II.    The district court correctly admitted photographs located on the Defendant's cellphone of his penis with E.T.'s underwear............29

III.    There is sufficient evidence to support the jury's conclusion that the Defendant transported child pornography by uploading and sharing child pornography between online accounts. ...................31

IV.    The district court's below-guideline sentence was reasonable and within its discretion. ...................................................................35

CONCLUSION ......................................................................................41

Form 8. Certificate of Compliance for Briefs ...........................................42

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Doe ex rel. Rudy-Glanzer v. Glanzer* 232 F.3d 1258 (9th Cir. 2000) ...... 21

*Miranda v. Anchondo* 684 F.3d 844 (9th Cir. 2012) ............................... 33

*Ohler v. United States* 529 U.S. 753 (2000) ........................................... 24

*Palmerin v. City of Riverside* 794 F.2d 1409 (9th Cir. 1986) ................. 24

*United States v. Allsup* 573 F.2d 1141 (9th Cir. 1978) ........................... 41

*United States v. Arambula-Ruiz* 987 F.2d 599 (9th Cir. 1993) ............... 28

*United States v. Betcher* 534 F.3d 820 (8th Cir. 2008) ........................... 39

*United States v. Davis* 859 F.3d 429 (7th Cir. 2017) .............................. 33

*United States v. Fall* 955 F.3d 363 (4th Cir. 2020) ................................ 33

*United States v. Finley* 301 F.3d 1000 (9th Cir. 2002) ........................... 15

*United States v. Flores* 729 F.3d 910 (9th Cir. 2013) ............................ 33

*United States v. Fox* 357 F. App'x 64 (9th Cir. 2009) ............................. 40

*United States v. Franklin* 321 F.3d 1231 (9th Cir. 2003) ....................... 25

*United States v. Hanson* 936 F.3d 876 (9th Cir. 2019) .......................... 26

*United States v. Hardrick* 766 F.3d 1051 (9th Cir. 2014) ...................... 26

*United States v. Heldt* 745 F.2d 1275 (9th Cir. 1984) ............................ 41

*United States v. Hernandez* 795 F.3d 1159 (9th Cir. 2015) ........ 36, 37, 38

*United States v. Johnson* 132 F.3d 1279 (9th Cir. 1997) ................. 18, 20

*United States v. Johnson* 451 F.3d 1239 (11th Cir. 2006) ...................... 39

*United States v. LeMay* 260 F.3d 1018 (9th Cir. 2001) ......... 15, 17, 20, 22

iii

*United States v. Martinez* 182 F.3d 1107 (9th Cir. 1999) ........................ 20

*United States v. Morales* 108 F.3d 1031 (9th Cir. 1997) ......................... 15

*United States v. Multi–Mgmt., Inc.* 743 F.2d 1359 (9th Cir.1984) ... 26, 27

*United States v. Phipps* 523 F. App'x 498 (9th Cir. 2013) ...................... 33

*United States v. Rone* 598 F.2d 564 (9th Cir. 1979) ................................ 32

*United States v. Rrapi* 175 F.3d 742 (9th Cir. 1999) ............................. 30

*United States v. Sangrey* 586 F.2d 1312 (9th Cir. 1978) ........................ 17

*United States v. Sarras* 575 F.3d 1191 (11th Cir. 2009) ........................ 39

*United States v. Sebolt* 460 F.3d 910 (7th Cir. 2006) ............................. 16

*United States v. Sioux* 362 F.3d 1241 (9th Cir. 2004) ....................... 15, 16

*United States v. Splettstoeszer* 956 F.3d 545 (8th Cir. 2020) ................. 18

*United States v. Thornhill* 940 F.3d 1114 (9th Cir. 2019) ............. passim

*United States v. Thurman* 494 F. App'x 828 (9th Cir. 2012) ................. 40

*Vizcarra-Martinez* 66 F.3d 1006 (9th Cir. 1995) .................................... 32

*Weeks v. Angelone* 528 U.S. 225 (2000) ................................................... 26

## STATUTES

18 U.S.C. § 2251(a) ...................................................................................... 2

18 U.S.C. § 2251(e) .................................................................................... 40

18 U.S.C. § 2252A ...................................................................................... 36

18 U.S.C. § 2252A(a)(1) ......................................................................... 2, 31

18 U.S.C. § 2252A(a)(2) ............................................................................ 32

18 U.S.C. § 2252A(a)(5)(B) ......................................................................... 2

18 U.S.C. § 2252A(b)................................................................................. 40

18 U.S.C. § 2260A ........................................................................ 3

18 U.S.C. § 3231 .......................................................................... 1

18 U.S.C. § 3553(a) ......................................................... 14, 37, 40

18 U.S.C. § 3553(a)(2) ............................................................... 35

28 U.S.C. § 1291 .......................................................................... 1

**RULES**

Federal Rules of Evidence 403 ......................................... passim

Federal Rules of Evidence 404(b) ................................... passim

Federal Rules of Evidence 414 ......................................... passim

Federal Rules of Evidence 414(a) ......................................... 15

**MISCELLANEOUS**

140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) ..................... 16

U.S. Sentencing Guidelines Manual § 4B1.5 (U.S. Sentencing Comm'n 2018) ..................................................................... 36

Black's Law Dictionary (11th ed. 2019) ............................... 33

*Sex Offense Cases and Other Cases* 70 Chi.-Kent L. Rev. 15 (1994) ...... 16

## JURISDICTION, TIMELINESS, AND BAIL STATUS

The district court had subject matter jurisdiction under 18 U.S.C. § 3231.  The district court entered its judgment on August 12, 2019. (1-ER-1-8.)[1]  The Defendant, Lex Bennett Goodwin, timely filed a notice of appeal on August 22, 2019.  (2-ER-72-73.)  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  The Defendant is currently serving a prison sentence of 100 years and is in the custody of the Federal Bureau of Prisons at USP Terre Haute.  (1-ER-3.)  The Federal Bureau of Prisons projects his release date as May 15, 2104.

## ISSUES PRESENTED

1. **Did the district court abuse its discretion by admitting evidence pursuant to Rule 414, with a limiting instruction, of the Defendant's other acts of sexual misconduct?**

2. **Did the district court abuse its discretion in admitting photographs located on the Defendant's cellphone of his penis with E.T.'s underwear?**

---

[1] As used in this document, "AOB" refers to the Defendant-Appellant's Opening Brief, and "ER" refers to the Defendant-Appellant's Excerpts of Record.  "SER" refers to the Plaintiff-Appellee's Supplemental Excerpts of Record.  "PSR" refers to the Presentence Report.

1

3. **Did insufficient evidence support the jury's conclusion that the Defendant transported child pornography within the meaning of the statute?**

4. **Did the district court render a substantively unreasonable sentence when it sentenced the Defendant to a below guideline sentence of 100 years?**

## STATEMENT OF THE CASE

In this criminal appeal, the Defendant challenges his convictions for:

- four counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) (counts one through four in the second superseding indictment),

- one count of attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) (count five in the second superseding indictment),

- one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) (count six in the second superseding indictment), and

- one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (count seven in the second superseding indictment).

2

The jury found that he committed the crimes charged in counts one through five while having a duty to register as a sex offender, a finding that supported a sentencing enhancement under 18 U.S.C. § 2260A. The Defendant does not challenge that enhancement but does challenge his sentence as substantively unreasonable.

### District court proceedings

The case proceeded to trial on a second superseding indictment. (3-ER-542-47.) Evidence of the following facts was adduced.

### The offense

In 2015, while on parole for a 2008 felony conviction of battery with intent to commit rape and while required to be registered as a sex offender,[2] the Defendant began a romantic relationship with Karisa Tingey, a woman with three young children. (3-ER-366, 369, 522-24.) One of Ms. Tingey's children, E.T., is a victim in this case. She was born in 2010 and was six years old at the time of the Defendant's

---

[2] The trial was bifurcated and the § 2260A sentencing enhancement was not presented to the jury until after it convicted the Defendant of the seven child pornography offenses. (3-ER-519-20.) Thus, the jury did not learn about the 2008 conviction, or the Defendant's status as a sex offender, until the second phase of the trial.

crimes.[3] (3-ER-366-67, 399.) Ms. Tingey and the Defendant also went on to have two children in common, including one who is also a victim in this case, M.G.[4] (3-ER-366.) She was born in 2016 and was sixteen months old at the time of the Defendant's crimes. (3-ER-366-67.) The Defendant did not live with Ms. Tingey, but would spend time with her and the children at her residence. (3-ER-371.)

On four occasions (reflected by four of the sexual exploitation counts in the indictment) between August and September of 2017, the Defendant took sexually explicit images of his sixteen-month-old daughter, M.G. (2-ER-221-23, 236, 244, 260.) These included close-up pictures of her genitals, (2-ER-221, 224-26), pictures of his hand touching and manipulating her genitals, (2-ER-226, 237), pictures of his erect penis near her genitals, (2-ER-262), and a picture in which she appears to be reaching her hand toward his erect penis as if to touch it. (2-ER-247.)

---

[3] E.T. is the victim of the conduct charged in count five of the second superseding indictment and is referred to as "Jane Doe II" in the indictment and the PSR. (3-ER-544.)

[4] M.G. is the victim of the conduct charged in counts one through four of the second superseding indictment and is referred to as "Jane Doe I" in the indictment and the PSR. (3-ER-542-44.)

4

Although the Defendant's face is not visible in the explicit images of M.G., Ms. Tingey recognized his penis in the images and identified that during trial. (3-ER-396.) Ms. Tingey also identified a ring, a pair of underwear, and a pair of sweatpants worn by the male in the images as items that looked like items the Defendant owned. (3-ER-392-95.)

On one occasion in August of 2017, the Defendant took a series of images of then-six-year-old E.T. wearing a shirt and skirt with her legs open to reveal her underwear. (2-ER-251, 253, 255.) In one picture, her underwear is moved to the side almost exposing her genitals. (2-ER-255.) The images suggest that E.T. was unaware that the Defendant was taking them. (2-ER-253.)

The Defendant uploaded the explicit images of M.G. and E.T., as well as images of child pornography depicting other children, to two Google accounts that belonged to him (lexinpocatello@gmail.com and lexgoodwin85@gmail.com). (2-ER-221-24, 236-39, 241, 246-47, 253-54, 261-62, 294.) He also shared a photo album containing child pornography between the two accounts, which the investigator testified requires an intentional act by the user of the account. (2-ER-143, 311.) In addition, the Defendant possessed child pornography on his Samsung Galaxy S7 cellphone and on a Gateway laptop computer to which he

had access.  (2-ER-186; 3-ER-376-78.)  The Exif data from the images of

M.G. and E.T. show they were created with the particular type of

camera found on a Samsung Galaxy S7 cellphone.  (2-ER-221-23, 235-

38, 244-45, 253-54, 260-61.)

During authorities' first contact with the Defendant about the

crimes at issue, during a regularly-scheduled meeting with his parole

officer, the Defendant told an investigator that he owned a Samsung

Galaxy S7 cellphone, but said the phone was with Ms. Tingey.  (2-ER-

124-25.)  Investigators soon discovered that was untrue and found his

phone, which he had used that day, in this car.  (2-ER-132-33; 3-ER-

390.)

The investigator testified that Defendant also acknowledged that

he had a Google account with the username lexgoodwin85, and his

photographs backed up to that account.  (2-ER-125.)  The Defendant

told the investigator that he used the lexinpocatello@gmail.com account,

but said the account was disabled after his ex-wife uploaded unwanted

images into the account.  (2-ER-126.)  The Defendant told the

investigator the account was deactivated in January or February of

2017, and denied child pornography had been uploaded to the account

in August of 2017.  (2-ER-126.)

When investigators forensically examined the Defendant's cellphone, they located images of M.G. and E.T., (2-ER-205-07), child pornography depicting other children, (2-ER-205.), and three pictures of the Defendant's penis with E.T.'s underwear.  (2-ER-273-75.) Investigators also determined that the Defendant's lexgoodwin85 account was synched to his cellphone.  (2-ER-212.)

When investigators forensically examined the Gateway laptop computer, they located child pornography and pictures of the Defendant in an application called Bluestacks.  (2-ER-193.)  The forensic examiner testified that the email address lexinpocatello@gmail.com had been used to access other applications within Bluestacks and to synch bookmarks on the Chrome internet browser.  (2-ER-188; 193.)

**Evidentiary issues**

Before trial, the Government provided notice and filed a motion in limine regarding four categories of "other acts" evidence it would seek to introduce under Federal Rules of Evidence 414 and 404(b).  (3-ER-562, ECF No. 40; 2-SER-12-13.)  Two of those categories are directly at issue in this appeal:  (1) evidence that between May and June of 2009, the Defendant engaged in online communications with a woman named Tia Leap, which provided probative evidence of his intent and desire to

commit incest and other sexual crimes with children; and (2) photographs located on the Defendant's cellphone of his penis with E.T.'s underwear.[5]  (1-ER-50-66.)

The district court issued a pretrial ruling that the 2009 evidence would likely be admissible under Rule 414 and Rule 404(b), and the photographs of the Defendant's penis with E.T.'s underwear were likely inextricably intertwined with the charged conduct and were also likely admissible under Rule 404(b).  (1-ER-50-66.)

**Rule 414 evidence**

Pursuant to the district court's in limine ruling, the Government mentioned the 2009 evidence in its opening statement but only sought to admit the evidence at the end of its case-in-chief.  (2-ER-89-90; 3-ER-404.)  By that time, counsel for the Defendant had cross-examined the Government's witnesses on at least seven occasions regarding other people's access to the Defendant's devices and accounts, the possibility the devices had been hacked, and the possibility data in the case had

---

[5]     The other two categories were:  (3) email communications between the Defendant and adult females; and (4) child pornography search terms and internet history from 2015 that were located on the Gateway laptop computer.  (2-SER-13.)  The Court denied the motion with respect to these other items.  (1-ER-66-70.)

been manipulated.  (2-ER-144-46, 211, 312; 3-ER-363, 401-02.)  Over the Defendant's renewed objection, the district court admitted the evidence under Rule 414.  (3-ER-407-09.)

The Defendant's former online contact, Ms. Leap, testified that during her communications with the Defendant, he had asked her to take sexual pictures of her daughter and other children who would come to her home.[6]  (3-ER-410.)  In addition, she testified that the Defendant asked her to visit a website that was known for child pornography.  She also testified that he told her he wanted to live with her so he could rape her children, have children with them, and then rape those children.  (3-ER-412.)

The Government also introduced text messages in which Defendant had encouraged Ms. Leap to perform sexual acts with the children in her home and to take sexual pictures of the children.

---

[6]     The Defendant was never charged with a crime for his communications with Ms. Leap.  However, the Defendant was on probation for the 2008 battery with intent to commit rape conviction, and the communications were used to violate his probation.  (PSR 2.) As a result, he was sent to prison, where he remained until 2014.  (PSR 2.)

(3-ER-415-20.) Ms. Leap testified that she contacted law enforcement in Idaho to report the Defendant's conduct. (3-ER-413.)

Finally, the Government presented testimony from Officer Tim Underwood, who had interviewed the Defendant about Ms. Leap's allegations. (3-ER-429.) Officer Underwood testified that the Defendant had admitted to communicating with Ms. Leap, (3-ER-430), but had said she was interested in children and he had been trying to fulfill her fantasies so she would offer to help him financially. (3-ER-431-32.) Officer Underwood asked the Defendant if he encouraged Ms. Leap to find a child at Walmart to photograph nude in a dressing room. (3-ER-433.) The Defendant responded that he was just trying to fulfill Ms. Leap's fantasy. (3-ER-434.)

### Rule 404(b) evidence

Over the Defendant's objection at trial, the district court admitted the three photographs of the Defendant's penis with E.T.'s underwear. (2-ER-270-72.)

### Limiting instructions

At the close of the evidence, the district court provided the jury with a Rule 414 limiting instruction for the 2009 evidence and a Rule 404(b) limiting instruction for the photographs of the Defendant's penis

10

with E.T.'s underwear. (3-ER-455-56.) The Defendant neither objected to these jury instructions nor requested that the district court provide the jury with a limiting instruction prior to the Government presenting the 2009 evidence. (3-ER-517; 1-SER-3-5.) The Defendant also did not move for a judgment of acquittal at the close of the evidence.

**Closings**

During closing argument, the Defendant argued that the Government had not proved that he took the images of M.G. and E.T. or that he knew about the child pornography on his cellphone and in his accounts. (3-ER-508-10.) Furthermore, he noted that several Samsung Galaxy S7 cellphones had been produced and the Government had not proved the images of E.T. and M.G. were created with his particular cellphone. (3-ER-509.) The Defendant reminded the jury that other people had access to his accounts and argued that his accounts and devices could have been hacked or manipulated. (3-ER-509-10.) The Defendant also argued that the photos of E.T. could have been taken accidently. (3-ER-511.) The jury found the Defendant guilty on all counts. (3-ER519-20; -526.)

11

**Jury finding in support of sentencing enhancement**

The Government next presented evidence of the Defendant's battery with intent to commit rape conviction in order to allow the jury to make a finding necessary for a sentencing enhancement. (3-ER-523-24.) The enhancement applies to anyone who produces child pornography while being required to register as a sex offender. The jury also found the Defendant guilty for purposes of the sentencing enhancement. (3-ER-530-31.)

**Sentencing**

Before sentencing, the PSR calculated the Defendant's total offense level at 49. (PSR 16.) It treated the offense level as 43, however, because that is the maximum offense level under the guidelines. (PSR 16.) This resulted in a guideline range of life, treated as a guideline range of 310 years, the maximum sentence for the seven substantive counts combined. (PSR 27.) The sentencing enhancement in count eight, for producing child pornography while having a duty to register as a sex offender, required the district court to impose a minimum of ten years in prison to run consecutively to counts one through five. (PSR 5.)

The Defendant objected to the initial PSR arguing that certain enhancements should not be applied to count five, the attempted sexual exploitation of E.T. (Defendant's Objection to Presentence Report 1-2.) The final PSR was amended to remove those enhancements. (PSR 14-15.) The Defendant did not object to any other aspect of the guideline calculation. The Defendant's guideline range was 310 years. (PSR 27.) The court sentenced the Defendant to a below-guideline sentence of 100 years. (1-ER-3.)

## SUMMARY OF ARGUMENT

This Court should affirm. The district court was well within its discretion to admit the contested Rule 414 and Rule 404(b) evidence. The high probative value of this evidence, which established the Defendant's intent and identity as the perpetrator of the charged conduct, was not substantially outweighed by the danger of unfair prejudice. In addition, the district court provided the jury with limiting instructions that were appropriate (and certainly not plain error).

Ample evidence supports the jury's reasonable conclusion that the Defendant knowingly transported child pornography. All that crime entails is the use of a facility of interstate commerce knowingly to move child pornography. The jury heard evidence that the Defendant

uploaded child pornography into two Google accounts and shared a photo album containing child pornography from one account to the other. This evidence amply supported the jury's verdict.

Finally, the Defendant's below-guideline sentence of 100 years is substantively reasonable. The court was well within its discretion. It carefully weighed the 18 U.S.C. § 3553(a) factors and determined that the Defendant's conduct and history of committing sexual offenses warranted a sentence of 100 years.

## ARGUMENT

### I. The district court was well within its discretion when it admitted evidence pursuant to Federal Rule of Evidence 414, with a limiting instruction, of the Defendant's prior acts of sexual misconduct.

The district court was well within its discretion when it admitted the 2009 evidence of the Defendant's prior sexual misconduct. The district court appropriately weighed the factors it was required to consider for admissibility under Rule 414. It correctly found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The district court provided the jury with an appropriate limiting instruction. Alternatively, if the district court did somehow err in admitting the evidence, such error was harmless.

14

## A.    Standard of review

A district court's decision to admit evidence under Federal Rule of Evidence 414 is reviewed for an abuse of discretion.  *United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001).  "A court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous view of the facts."  *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir. 2002) (citing *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc)).

## B.    The district court properly admitted the evidence after careful weighing under the correct, substantive standard.

Federal Rule of Evidence 414(a) reads as follows:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which it is relevant.

FED. R. EVID. 414(a).  In child molestation cases, Rule 414 supersedes Rule 404(b)'s restriction against the use of propensity evidence.  *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004).

In promulgating Rule 414, Congress recognized that a defendant's prior sexual misconduct can provide vital corroboration in child molestation cases, which can be difficult to prove because of the

15

"typically secretive nature of the crimes." *See* David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent L. Rev. 15, 20 (1994).[7]  Rule 414 reflects the compelling public interest in "admitting all significant evidence that will illumine the credibility of the charge and any denial by the defendant."  *Id.* at 21. This represents a strong legislative judgment that evidence of prior sexual offenses is presumptively admissible.  *Sioux* , 362 F.3d at 1244.

Evidence admissible under 414 is still subject to Rule 403's balancing test and may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *United States v. Thornhill*, 940 F.3d 1114, 1118 (9th Cir. 2019).  Even if evidence is highly prejudicial, it is not necessarily unfairly prejudicial. *Id.* at 1123 (citing *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006)).  When applying Rule 403 to Rule 414 evidence, district courts

---

[7]    Mr. Karp was one of the original drafters of Federal Rule of Evidence 413, and Representative Susan Molinari stated in a speech to the House that his address, which was reprinted in this law review article, "should . . . be considered an authoritative part of [Rule 413's] legislative history."  140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari).

evaluate the following non-exhaustive factors: "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." *Id.* at 1118 (citing *LeMay*, 260 F.3d at 1027-28). The district court need not enumerate the factors. It is enough that the record as a whole establishes that the district court adequately weighed the probative value and prejudicial effect of the evidence. *United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir. 1978).

Here, the record establishes that the district court conducted a proper 403 analysis. The district court considered the parties' briefs and arguments, which addressed the *LeMay* factors. (1-ER-6-10; 2-ER-12-40.) The district court's analysis also shows its use of the factors as it explained its decision. The *LeMay* factors weigh in favor of admissibility and support the district court's conclusion.

## 1. The prior acts are strikingly similar to the charged conduct.

The district court correctly determined that the Defendant's "prior behavior and communications with [Ms. Leap] are strikingly similar to

17

the charges in this case." (1-ER-63.) "The past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997).

This Court, and other courts, recognize the probative value of evidence relating to a defendant's sexual interest in incest when incestuous behavior is charged. *Thornhill*, 940 F.3d at 1119 (evidence that defendant sexually abused his daughter admissible in a child pornography prosecution because the child pornography files depicted victims similar in age to his daughter and defendant used search terms relating to father and daughter incest); *see United States v. Splettstoeszer*, 956 F.3d 545, 548 (8th Cir. 2020) (evidence defendant sexually abused his daughter was probative of the defendant's intent to possess child pornography files depicting father-daughter incest and admissible under Rule 414.).

Here, the 2009 conduct and the charged conduct are strikingly similar. Both involve the Defendant's efforts to possess, and produce, child pornography. In this case, the Defendant produced, and attempted to produce, child pornography of children with whom he had a familial relationship. He also possessed explicit images of other

children.  In 2009, the Defendant encouraged Ms. Leap to produce child pornography of children with whom she had a familial relationship, as well as other children in her home or any child she may encounter at Walmart.  The Defendant used his relationship with Ms. Leap, and her access to children, to attempt to obtain child pornography.  The Defendant similarly used his relationship with Ms. Tingey, and his access to her daughter and their daughter in common, to obtain child pornography.

But the most probative aspect of the 2009 conduct was Defendant's expressed desire to father a child he could then sexually abuse.  The charged conduct showed that the Defendant had in fact fathered a child he had then sexually abused.  Moreover, he had taken photos of the abuse.  Thus, his statements to Ms. Leap about his sexual desires mirror quite exactly his conduct leading up to and during the charged conduct.  He said he wanted to father and abuse his own child and he did so.

## 2.  The prior acts were not too remote.

The 2009 conduct was not too remote in time to be probative.  The Defendant's communications with Ms. Leap occurred approximately eight years before the charged conduct.  As the district court pointed

19

out, however, the Defendant was incarcerated until July of 2014 due to his probation violations during the communications with Ms. Leap. (1-ER-61.) Thus, he was unable to commit additional crimes for approximately five of the eight years. *See United States v. Martinez,* 182 F.3d 1107, 1110-11 (9th Cir. 1999) (10-year lapse was permissible under Rule 404(b) because defendant was incarcerated and unable to commit additional crimes for some time). Moreover, the charged conduct occurred a mere three years after the Defendant's release from incarceration. This Court has permitted more significant lapses in time. *Johnson*, 132 F.3d at 1283 (13 years not too remote); *see also LeMay,* 260 F.3d at 1029 (11 years not too remote). The conduct is not too remote to be probative.

### 3. The prior acts were frequent.

The 2009 conduct involved repeated and frequent communications between the Defendant and Ms. Leap over the course of approximately one month. If the prior conduct is frequent, as opposed to an isolated incident, this Court recognizes it has more probative value. *See Thornhill*, 940 F.3d at 1120 (frequency factor weighed in favor of admitting the evidence because defendant molested his daughter on a several occasions over 3 years.)

The 2009 conduct was not an isolated incident. The Defendant discussed his sexual interest in children and repeated his requests for child pornography throughout his one-month relationship with Ms. Leap. The frequency of the acts weighs in favor of admission.

### 4. There are no intervening circumstances that weigh against the admission of the evidence.

When evaluating this factor, this Court has focused on whether a defendant commits any intervening acts of misconduct or has a long period of law-abiding behavior. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1269 (9th Cir. 2000). In this case, the Defendant was on probation for a sex crime when he engaged in the sexual misconduct with Ms. Leap. As a result, he was sent to prison, and remained in prison, until 2014. He reoffended in 2017. There were no intervening events between the 2009 conduct and the charged conduct that weigh against admission. Moreover, any lack of intervening misconduct can reasonably be explained by the Defendant's incarceration.[8]

---

[8] The child pornography search terms on the Gateway computer date back to 2015. (1-ER-69.) Although the search terms were not admitted at trial, they indicate the Defendant began searching for child pornography shortly following his release from incarceration.

21

### 5.     The prior acts evidence was necessary.

The 2009 conduct was necessary to rebut the Defendant's claim that he was not the person who produced the images of M.G. and E.T. or put child pornography on his devices or accounts. "Prior acts evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *LeMay*, 260 F.3d at 1029 (emphasis in original). District courts may consider whether the evidence is necessary to rebut a defense raised at trial. *Thornhill*, 940 F.3d at 1120 (defendant's prior conviction for sexually abusing his daughter was necessary to rebut defendant's claim that he was not responsible for the child pornography on his phone).

Intent is a difficult element to prove, especially when a defendant is accused of sexually exploiting his own biological child. It is hard for the average person to comprehend that someone would sexually abuse and exploit their own child. For that reason, the best defense in these cases, and the one the Defendant used, is to offer the jury an alternate explanation, such as that someone else took the pictures, the devices and accounts were hacked, or data was manipulated. The 2009 evidence was necessary to rebut the Defendant's alternate explanation,

to establish his identity as the perpetrator of the crimes, and to prove his sexual intent.

As the district court pointed out, the Government had a plethora of evidence establishing that the Defendant's devices and accounts contained child pornography. (1-ER-63.) However, the district court viewed the 2009 conduct as "critical to the Government's case" because the Government had little direct evidence linking the Defendant to the crimes. (1-ER-63.) The district court correctly predicted that the Defendant would raise the issue of his identity, knowledge, and intent at trial and recognized the value of the 2009 evidence to rebut such a defense. (1-ER-62.) The district court correctly determined that the 2009 conduct was necessary to the Government's case.

In summary, all the *LeMay* factors support the district court's decision to admit the evidence. They collectively establish that the probative value of the evidence was high and that it outweighed any unfair prejudice that would result. This was especially true given that the 2009 communications, while certainly distasteful, involved the Defendant directing someone else and discussing his own desires. The charged conduct, which included graphic child pornography images that

23

established that the defendant had actually acted on his desires, was far more disturbing.

The Defendant's remaining contrary argument — that the district court actually admitted the 2009 evidence in its pretrial, in limine ruling before the Defendant had raised any issue of his identity, knowledge, and intent, *see* (AOB 16-18) — fails as a matter of law and as a matter of fact.  First, as a matter of law, and as the district court itself pointed out, in limine rulings are preliminary and are not binding on the trial judge.  (1-ER-56) (citing *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000)); *Palmerin  v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986).  In this case, the district court did not actually admit the evidence at the time it ruled on the motion in limine.  It did so at trial.[9]  And by then, it was abundantly clear what the defendant's defense entailed thanks to defense counsel's cross-examinations. *See, e.g.*, (2-ER-144-46, 211, 312; 3-ER-363, 401-02).

---

[9]     Likewise, although the district court mentioned that the Government intended to call an out-of-state witness to introduce the 2009 evidence, the district court did not, as the Defendant argues, rely on that as a basis to admit the evidence.  (AOB 18.)  The district court issued a pretrial ruling so both parties had guidance on the evidence that would likely be admitted at trial, and properly analyzed the admissibility of the evidence under Rules 414, 404(b), and 403.

As a matter of fact, the Defendant's argument fails because he did use the defense the court had anticipated. And the court had anticipated it for good reason. Not only is it an extremely common defense, but the Defendant had already been using it for some time. During his initial interview with law enforcement, he claimed that his ex-wife had put unwanted images into his Google account. And, in his pretrial objection to the child pornography search terms and internet history on the Gateway computer, he argued that other people had access to the computer and could have been responsible for the search terms. (1-SER-9.) Thus, the defense was hardly a surprise and the district court rightly anticipated and analyzed it pretrial. It could then refer back to its reasoning during trial. (3-ER-409.) It was well within its discretion.

### C. The district court properly instructed the jury regarding the 414 evidence.

When a defendant does not object to the jury instructions at trial, this Court reviews the instructions for plain error. *United States v. Franklin*, 321 F.3d 1231, 1240 (9th Cir. 2003). "Plain error requires an (1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* (internal quotation marks omitted).

25

The district court admitted the 2009 evidence under Rule 414 and provided the jury with a limiting instruction that accurately set forth how the jury could consider it.  There was no error, let alone plain error.

District courts can lessen the prejudicial effect of Rule 414 evidence by providing the jury with a limiting instruction.  *United States v. Hanson*, 936 F.3d 876, 882 (9th Cir. 2019).  A jury is presumed to follow instructions.  *Weeks v. Angelone*, 528 U.S. 225, 226 (2000). This Court has suggested providing a 414-limiting instruction prior to the presentation of the evidence and again at the close of the evidence. *Hanson*, 936 F.3d at 882.  However, in analogous circumstances, it is "'well-settled that where no limiting instruction is requested concerning evidence of other criminal acts, the failure of the trial court to give such an instruction *sua sponte* is not reversible error.'"  *United States v. Hardrick*, 766 F.3d 1051, 1056 (9th Cir. 2014) (quoting *United States v. Multi–Mgmt., Inc.*, 743 F.2d 1359, 1364 (9th Cir.1984)) (district court did not err by not providing a 404(b)-limiting instruction prior to the presentation of the evidence because defendant did not request such an instruction).  A defendant may have sound strategic reasons for not asking for a limiting instruction during the presentation of the

evidence, including not wanting to draw undue attention to the evidence. *Id.*

Here, the Defendant did not object to the Rule 414 limiting instruction at trial nor did he request that the district court provide any instruction before the evidence's presentation. (3-ER-516-17; 1-SER-2-5.) The district court did not err, let alone plainly err, by not *sua sponte* providing a limiting instruction prior to the presentation of the 2009 evidence. It is entirely possible that the Defendant had a sound reason for not requesting such an instruction.

Contrary to the Defendant's argument, the district did not err, let alone plainly err, by failing to provide the jury with a 404(b)-limiting instruction. In its pretrial ruling, the district court had determined that the 2009 evidence was likely admissible under both rules. However, at trial it admitted the evidence solely under Rule 414. (3-ER-409.) Thus, it properly provided the jury with a Rule 414 limiting instruction regarding the 2009 evidence, not with a Rule 404(b) limiting instruction.

Because the jury was properly instructed at the close of the evidence and jurors are presumed to follow instructions, the Defendant

27

cannot show that any alleged error in not instructing the jury prior to the presentation of the evidence affected his substantial rights.

**D.    Any error in admitting the evidence was harmless.**

If this Court concludes that all or part of the 2009 evidence was erroneously admitted, it should nonetheless affirm.  "This [C]ourt reverses for nonconstitutional errors in admitting evidence only if it is more probable than not that the erroneous admission of the evidence materially affected the jurors' verdict."  *United States v. Arambula-Ruiz*, 987 F.2d 599, 605 (9th Cir. 1993) (internal quotation marks omitted).  While the 2009 conduct was particularly important to rebut the defense at trial, a reasonable jury could and would have convicted the Defendant without it.  Ample evidence of the Defendant's guilt shows that any error in admitting the 2009 conduct was harmless.

The jury heard evidence that explicit images of M.G. and E.T. were located on the Defendant's cellphone and in his Google accounts. According to the Exif data from the images, they were taken with the same type of camera found on the Defendant's cellphone.  The jury further heard evidence that the Defendant had access to, and was around, M.G. and E.T. near the time the images were taken.  Ms.

Tingey identified the Defendant's penis and items that likely belonged to the Defendant in the images.

The jury also heard evidence there were numerous child pornography files depicting other children on the Defendant's cellphone, in the Google accounts, and on the Gateway laptop computer. The Government presented evidence that tied the Defendant to these accounts and devices. The jury also heard that the Defendant lied to law enforcement about the location of his cellphone. There was strong evidence that the Defendant produced, transported, and possessed child pornography even absent the 2009 evidence. Any error in admitting the 2009 conduct was therefore harmless.

## II. The district court correctly admitted photographs located on the Defendant's cellphone of his penis with E.T.'s underwear.

The district court was well within its discretion in admitting the graphic photographs with E.T.'s underwear located on the Defendant's cellphone. The district court correctly determined that the evidence was inextricably intertwined with the charged conduct and was admissible under Rule 404(b) to identify the Defendant as the producer of the images of E.T. and to establish his sexual intent. (1-ER-64-65.)

It also determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

The Defendant does not challenge the relevancy of the evidence or its admissibility under Rule 404(b).  (AOB 22-23.)  And it would be difficult to do so.  The evidence was highly probative for a variety of reasons.[10]  Instead, he asserts that the district court failed to weigh the evidence's high probative value against the danger of unfair prejudice under Rule 403.

This argument fails for at least two reasons.  First, the district court was not required expressly to discuss Rule 403 in its analysis. *See United States v. Rrapi*, 175 F.3d 742, 749 (9th Cir. 1999).  "It is enough that this [C]ourt can conclude, based on a review of the record, that the district court considered Rule 403's requirements."  *Id.* (internal quotation marks omitted).

---

[10]     These reasons include the facts that:  (1) the underwear in the photographs belonged to the victim E.T.; (2) the photographs were taken at the same location, and with the same cellphone, as the explicit pictures of E.T.; (3) the photographs were located on the Defendant's cellphone, along with the explicit pictures E.T.; and (4) the photographs were taken 10 days after the explicit images of E.T. were taken.  (2-ER-270-75.)

Second, the record reveals that the district court did conduct the necessary Rule 403 analysis. It began its pretrial ruling with a citation to Rule 404(b) and Rule 403. (1-ER-56-57.) It also reviewed the Defendant's brief prior to issuing its pretrial ruling and specifically recited—and rejected—the Defendant's argument that "the images of the underwear and the penis will do [nothing] to assist the jury to decide whether the elements of the charges have been proven." (1-ER-64-65.; 1-SER-8.) Thus, the district court understood its obligation to consider Rule 403's requirements and both considered and rejected the Defendant's argument that the evidence had little probative value. The district court did not err, much less abuse its discretion.

## III. There is sufficient evidence to support the jury's conclusion that the Defendant transported child pornography by uploading and sharing child pornography between online accounts.

Ample evidence supports the jury's reasonable conclusion that the Defendant knowingly transported child pornography. All the crime entails is the knowing transportation (or movement from one place to another) of child pornography using a facility of interstate commerce, such as a computer or the internet. 18 U.S.C. § 2252A(a)(1). The

statute does not require the physical movement of the child pornography or the transportation to a third party.[11]

The Defendant used the internet to upload child pornography to his Google accounts and share child pornography between the accounts. This constitutes transportation of child pornography and ample evidence supports the jury's verdict.

Because the Defendant did not seek a judgment of acquittal at trial, this Court reviews the jury's verdict for plain error. *United States v. Rone*, 598 F.2d 564, 572 (9th Cir. 1979). The Court must view the evidence in the light most favorable to the Government and affirm if any rational trier of fact could have found that the Defendant knowingly transported child pornography. *Vizcarra-Martinez,* 66 F.3d 1006, 1009–10 (9th Cir. 1995).

Uploading and sharing child pornography between online accounts constitutes transportation. A fundamental canon of statutory construction requires that unless otherwise defined, words "will be interpreted as taking their ordinary, contemporary, common meaning."

---

[11]     Distributing files of child pornography to a third party is covered under 18 U.S.C. § 2252A(a)(2).

*United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) (quoting

*Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012)).  The plain

meaning of "transport" is "[t]o carry or convey (a thing) from one place

to another."  *Transport,* BLACK'S LAW DICTIONARY (11th ed. 2019).  Thus,

"transportation" is the conveyance of something to *another place*.

Courts have recognized that the uploading of child pornography to

cloud storage accounts or websites constitutes the transportation of

child pornography.[12]  *See United States v. Fall*, 955 F.3d 363, 367, 374-

75 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 310 (2020) (affirming

transportation conviction for a defendant who uploaded a video of child

pornography from his laptop to his Dropbox cloud storage account);

*United States v. Davis*, 859 F.3d 429, 432, 434 (7th Cir. 2017) (affirming

transportation conviction when the defendant "knowingly uploaded the

pornographic images to Shutterfly," an "online photo-sharing website").

In this case, the jury heard detailed and sufficient evidence that

the Defendant transported child pornography in two ways:  (1) by

---

[12]     In an unpublished opinion, this Court determined that
sending child pornography via email constitutes transportation.  *United
States v. Phipps*, 523 F. App'x 498, 500 (9th Cir. 2013).

sharing a photo album containing child pornography from one Google account to the other and (2) by uploading files of child pornography into his two Google accounts.  Contrary to the Defendant's argument, this was not the result of "the mere automatic copying" between the Defendant's various devices.  This was the result of deliberate and intentional acts.

The jury heard evidence that the Defendant shared a specific photo album containing child pornography from one Google account to the other.  (2-ER-143, 311.)  As the investigator testified, this requires a purposeful action by the user.  (2-ER-143, 311.)  The jury also heard there were numerous files of child pornography, including the images of M.G. and E.T., uploaded into the accounts.  (2-ER-221-24, 236-39, 241, 246-47, 253-54, 261-62, 294.)  It was more than reasonable for the jury to conclude that the Defendant purposefully uploaded the files.

Although the jury heard that the lexgoodwin85 account was synced to the Defendant's cellphone, the jury also heard that the Defendant knew his photographs backed up to the account.  (2-ER-125.) To the extent any of the uploads can be explained by an automatic backup, the Defendant knew about the backup.

34

Moreover, child pornography was also located in the lexinpocatello Google account. There was no evidence presented at trial that the Defendant's cellphone or the Gateway laptop computer were synced to the lexinpocatello account. Thus, the child pornography in that account cannot be explained by an automatic backup, nor can the sharing of a specific photo album between the accounts.[13] Viewing the evidence in the light most favorable to the Government, the jury reasonably concluded that the Defendant transported child pornography. There was no error, let alone plain error, and this Court should affirm the jury's verdict.

## IV. The district court's below-guideline sentence was reasonable and within its discretion.

"A substantively reasonable sentence is one that is sufficient, but not greater than necessary to accomplish § 3553(a)(2)'s sentencing

---

[13] The Defendant states that "the expert testified that the computer contained a Bluestacks program which linked the computer to the cellphone." (AOB 24.) This misstates the forensic examiner's testimony. The forensic examiner testified the lexinpocatello account was used to access applications within Bluestacks and to synch bookmarks on the Chrome internet browser. (2-ER-188-89, 196.) He did not, however, testify that the Gateway computer was set to backup photos to the lexinpocatello account or that the Bluestacks application linked the Gateway computer directly to the Defendant's cellphone.

goals." *United States v. Hernandez*, 795 F.3d 1159, 1168 (9th Cir. 2015) (internal quotation marks omitted). In this case, the district court's sentence of 100 years—effectively a life sentence, as Defendant notes—satisfies that definition. Its imposition was well within the court's discretion in light of the defendant's crimes, his history, and the need to protect society.

The guidelines specifically provide for enhanced penalties for repeat sex offenders "who present a continuing danger to the public" and are designed to "ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.5, background (U.S. SENTENCING COMM'N 2018). The Defendant is just such a person.

Additionally, 18 U.S.C. § 2252A provides enhanced penalties for offenders who commit certain sex offenses against a minor during a time when they are required to register as a sex offender. These provisions are designed to ensure that offenders who have a

demonstrated pattern of committing sexual offenses, like the Defendant, serve lengthy prison sentences.[14]

The collective imposition of all these enhancements—imposed precisely because they fit the facts of this case so well—resulted in an extremely lengthy sentencing guideline of 310 years. The district court did not adopt that recommendation, however. It chose a sentence well below the guideline recommendation. It chose the sentence it found "sufficient, but not greater than necessary," (1-ER-39-43), just as it was required to do. *Hernandez*, 795 F.3d at 1168.

The district court was well familiar with the facts of the case and with Defendant's history, and it referred to both repeatedly as it weighed the 18 U.S.C. § 3553(a) factors. It noted that the Defendant

---

[14] The Defendant also received the four-level infant or toddler enhancement and the two-level use of a computer enhancement. He does not argue that the district court erred in applying these enhancements, but he does argue that the application of these and other enhancements led to a substantively unreasonable sentence. (AOB 31-32.) As a simple, factual matter, he is incorrect. Even if the district court had not applied these two enhancements, the Defendant's guidelines would have been the same — life in prison. Without the enhancements, his total offense level would have been 45 instead of 49. (PSR 16.) Because the maximum offense level under the guidelines is 43, his total offense level would be 43 with or without the enhancements. In addition, however, there was every reason to apply these and all the other enhancements in light of the facts of this case.

37

had committed new crimes while still under supervision for old ones in the past. *See, e.g.*, (1-ER-41-42) (citing the Defendant's previous violation of probation when he solicited Ms. Leap to produce child pornography). And the defendant had, of course, committed the current crimes while on parole and while he was required to register as a sex offender, as the jury had expressly found. (3-ER-523-24, 530-31.)

The court found that "the Defendant's sexual deviancy not only continued but escalated" with the commission of the instant offense. (1-ER-42, 44). This finding was abundantly reasonable in light of the evidence of his fantasies in 2009 and of his currently charged crimes. Both involved having a child whom he could abuse sexually. The court also correctly found that, despite having had multiple opportunities for rehabilitation, the Defendant had plainly shown himself to be "a perpetual sexual offender by his victimization of both adult and minor victims." (*Id.*) In light of the danger he therefore posed, the district court concluded that a life sentence was necessary. This was an abundantly reasonable conclusion and well within the district court's discretion.

The Defendant's remaining arguments amount to assertions that he deserved a break because he could have engaged in even worse

38

sexual abuse of his young victims, but he did not, and that the Government should not have charged him as it did.

Sentencing necessarily turns not on what a Defendant did not do, but on precisely what he did. And what he did, viewed in light of his history, is what warranted this sentence. The district court reasonably concluded that his conduct was serious and deserving of substantial punishment.[15] "Child sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable." *United States v. Sarras*, 575 F.3d 1191, 1219–21 (11th Cir. 2009); *see also United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (per curiam) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16); *see also United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as

---

[15] It is also worth noting that, while the images of M.G. and E.T. did not depict "sexual acts, such as penetration" or sadistic or masochistic conduct, the Defendant possessed images of other children that did depict such conduct. (PSR 10.)

reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls).[16]

The Defendant's arguments regarding the Government's charging decision also fails. First, part of his argument appears to be based on a misapprehension of the law. The Government's filing of a notice of enhanced penalties did not increase the Defendant's potential penalties from 25 to 35 years as he seems to suggest. *See* (AOB at 27.) The filing simply notified him of the increased mandatory minimum penalties he faced because he had a prior conviction under state law relating to aggravated sexual abuse or sexual abuse, pursuant to 18 U.S.C. §§ 2251(e) and 2252A(b).

Second, and more fundamentally, the Government's charging decisions are not a factor to be considered at sentencing under § 3553(a) or the United States Sentencing Guidelines. The Government is permitted to bring additional charges when plea negotiations are

---

[16]      Several unpublished decisions in this Circuit have affirmed similar sentences. *See United States v. Thurman*, 494 F. App'x 828 (9th Cir. 2012) (unpublished) (affirming 120-year sentence for sexual exploitation of a child); *United States v. Fox*, 357 F. App'x 64 (9th Cir. 2009) (unpublished) (affirming 110-year sentence for sexual exploitation and child pornography offenses).

unsuccessful. *United States v. Heldt*, 745 F.2d 1275, 1281 (9th Cir. 1984); *United States v. Allsup,* 573 F.2d 1141, 1143-44 (9th Cir. 1978). In this case, the Government added charges reflecting the entirety of the Defendant's conduct before proceeding to trial. The district court properly considered this conduct at sentencing following the jury's guilty verdict.

A 100-year sentence is substantively reasonable under the facts of this case. The district court was well within in its discretion in imposing the sentence.

## CONCLUSION

For the reasons above, the Government requests that this Court affirm the Defendant's conviction and sentence.

Respectfully submitted this 19th day of March, 2021.

RAFAEL M. GONZALES, JR.
Acting United States Attorney
District of Idaho
By


s/ Kassandra McGrady
KASSANDRA MCGRADY

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 19-30193

I am the attorney or self-represented party.
**This brief contains 7,977 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).
I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

     [  ] it is a joint brief submitted by separately represented parties;

     [  ] a party or parties are filing a single brief in response to multiple briefs; or

     [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Kassandra McGrady     **Date** March 19, 2021
*(use "*s/[typed name]*" to sign electronically-filed document*

42