NO. 19-30193

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent - Appellee, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LEX BENNETT GOODWIN, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

Appeal from the United States District Court
for the District of Idaho, District Court No. 4:17-CR-296-DCN
The Honorable David C. Nye Presiding

APPELLANT'S REPLY BRIEF

Andrew Parnes
Law Office of Andrew Parnes
P.O. Box 5988
671 N First Avenue
Ketchum, Idaho 83340
Phone: (208) 726-1010
Fax:    (208) 726-1187
aparnes@mindspring.com

Attorney for Defendant - Appellant
Lex Bennett Goodwin

## TABLE OF CONTENTS

I.    THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF
APPELLANT'S REMOTE PRIOR CONVERSATIONS INVOLVING
DISCUSSIONS OF RAPING, SEIZING AND PHOTOGRAPHING
MINORS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT
THE CHARGE OF TRANSPORTING CHILD PORNOGRAPHY. . . . . . 13

III.  THE TRIAL COURT'S SENTENCE OF 100 YEARS WAS NOT
REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATION PURSUANT TO CIRCUIT RULE 32-1. . . . . . . . . . . . . . . . 18

CERTIFICATION OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

*Doe v. Glanzer,* 232 F.3d 1258 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Allsup,* 573 F.2d 1141 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . 16

*United States v. Curtin,* 489 F.3d 935 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Davis,* 859 F.3d 429 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Fall,* 955 F.3d 333 (4th Cir. 2020.) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Fox,* 357 F. App'x 64 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Heldt,* 745 F.2d 1275 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Johnson,* 451 F.3d 1239 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . 15

*United States v. LeMay,* 260 F.3d 1018 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . 1, 3

*United States v. Phipps,* 523 F. App'x 498 (9th Cir. 2013). . . . . . . . . . . . . . . . . . 14

*United States v. Preston,* 873 F.3d 829 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Sangrey,* 586 F.2d 1312 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . 2

*United States v. Sarras,* 575 F.3d 1191 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . 15

*United States v. Splettstoeszer,* 956 F.3d 545 (8th Cir 2020) . . . . . . . . . . . . . . . . . 4

*United States v. Thornhill,* 940 F.3d 114 (9th Cir. 2019) . . . . . . . . . . . . . . . 3, 5, 6

*United States v. Thurman,* 494 F.App'x 828 (9th Cir. 2012) . . . . . . . . . . . . . . . . 15

This reply brief is intended solely to respond to the Government's contentions requiring further discussion for the proper determination of the issues raised on appeal. Appellant specifically adopts his arguments in the opening brief whether or not discussed individually below, and intends no waiver of issues and arguments not expressly reiterated herein.

I.  THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF APPELLANT'S REMOTE PRIOR CONVERSATIONS INVOLVING DISCUSSIONS OF RAPING, SEIZING AND PHOTOGRAPHING MINORS

Defense counsel objected to the introduction of the other act evidence prior to trial solely in that it was a violation of Federal Rules of Evidence 403; there was no objection on the grounds that the admission would violate FRE 414. The Government first argues that the district court's admission of the contested evidence was proper under FRE 414 and that a district court need not enumerate the basis for its ruling under the factors set forth in *Doe v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) and followed in *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001). (Response Brief, hereinafter "RB," 17.) However, *Doe v. Glanzer* and its progeny do not support the Government's conclusion when the highly inflammatory prior sexual act evidence is admitted.[1] The Government relies on a

---

[1]This Court in *LeMay* noted that the trial in that case was conducted before the decision in *Doe v. Glanzer;* therefore, the trial court was not on notice of what

1

single case, *United States v. Sangrey*, 586 F.2d 1312 (9th Cir. 1978), decided well before the adoption of rule 414 in 1994 and the unique issues raised by the adoption of this new evidence rule. Because the district court did not fully consider each of the factors before admitting the evidence, the court abused its discretion and reversal is required.

As explained below, in analyzing the five factors, several weigh in favor of exclusion of the detailed evidence presented at the trial.

1.     Similarity between the prior acts and the charged conduct

The Government alleged that since Mr. Goodwin was guilty of taking pornographic pictures of two minors in 2017, the fact that he spoke with Ms. Leap in 2009 about his interest in such pictures and the mention of a website for such material are similar to the charged conduct; however, most of the inflammatory nature of his texts and discussions with Ms. Leap are not similar in nature. Her testimony that he wanted to *rape* her children to have grandchildren that he could then *rape* bears no similarity to the allegations in the indictment. Indeed, Mr. Goodwin was charged in two counts with taking a photograph of a young girl under her skirt, with her genitals barely exposed. Had he been charged with

---

needed to be particularly considered when applying rule 403 in this context. The district court, considering the issue almost twenty years later and not in the midst of trial, should be granted no such leeway here..

2

actually raping a child, the Government might be correct in arguing that the acts were "strikingly similar" as the district erroneously concluded. (RB 17-18.)

Nor does the evidence that Mr. Goodwin encouraged Ms. Leap to seize a child at a Walmart store to take nude pictures of them bear *any* similarity to the charged conduct. On the other hand, this evidence is highly inflammatory and unfairly prejudicial.

The *LeMay* decision is instructive on the issue of similarity, which relied on the almost factual identity of the prior cases. "The 1989 molestations were very similar to the charged crimes. Each case involved forced oral copulation. In each case the victims were young relatives of LeMay, and each instance occurred while LeMay was babysitting them." *LeMay*, 260 F.3d at 1028. The prior act testimony exhibits no such striking similarities to permit the detailed testimony allowed in evidence against Mr. Goodwin.

The Government relies on two cases to argue that Mr. Goodwin's sexual interest in incest supports admission of the prior act testimony. (RB 18.) Neither case controls the facts here. In *United States v. Thornhill*, 940 F.3d 114 (9th Cir. 2019), this Court considered the admission of a prior *conviction* for sexual abuse of the defendant's daughter in a subsequent charge of receipt of child pornography. This Court admitted the prior conviction evidence in a sanitized

form, without the type of details presented by the Government against Mr.
Goodwin. Because the Government's evidence against Thornhill pertinent to the
charges involved searches for incestuous pornography, this Court found sufficient
similarity under the *Doe/LeMay* factors. In contrast here, under the sufficient
similarity standard, the "rape" testimony and the discussion of abducting a child
from a Walmart bear no similarity to the charged conduct here.

Nor is *United States v. Splettstoeszer*, 956 F.3d 545 (8th Cir 2020)
controlling here. The defendant there had pled guilty to a prior molestation of his
children and that *conviction* was admitted at a subsequent trial on new child
molestation charges because it tracked the files and searches on the defendant's
computer showing an interest specifically in incestuous relationships. Here, the
evidence was not limited to a *conviction* but was based on alleged conversations
and texts with Mr. Goodwin regarding wildly different and inflammatory conduct.

Indeed, the evidence admitted here is closer to the improper admission
"fantasy" evidence considered by this Court in *United States v. Preston*, 873 F.3d
829 (9th Cir. 2017).

> Evidence of a subsequent masturbation incident linked to child-incest
> fantasy is highly prejudicial to a defendant charged with child
> molestation; a jury confronted with such disgusting evidence is likely
> to conclude that the defendant "is the type" to molest a child. *See
> United States v. Curtin*, 489 F.3d 935, 964 (9th Cir. 2007) (Kleinfeld,

> J. concurring) ("incest has had a rare power to disgust" (quoting Richard A. Posner, *Sex and Reason* 201 (1994)). Moreover, as this Court has recognized, in many cases, the "link between fantasy and intent is too tenuous to be probative," as "[p]eople commonly fantasize about doing things they have no intention of actually doing." And fantasy is even less probative of intent in cases where, as here, intent is not actually disputed—that is, where the defense is a general denial of committing the offense, rather than an admission to an act coupled with a specific denial of the requisite intent.

*Id*. at 841 (footnote omitted)

While the evidence in *Preston* was admitted under FRE 404(b), the court noted that "[w]here the other acts offered are specific incidents of prior child molestation—which would clearly be similar to the charged offense here—Federal Rule of Evidence 414 expressly permits them to be admitted 'on any matter to which it is relevant.' Other acts of mere fantasy or auto-eroticism, however, are not permitted under this rule." *Ibid.* at 841, n. 2.

Here the testimony from Ms. Leap regarding the "rape" and abduction should have been excluded as non-similar because it involved "fantasy" and Mr. Goodwin was never convicted on any crime based on these prior convictions. Indeed, the Government refers to the "evidence of his fantasies in 2009. (RB 38.) This Court in *Thornhill* distinguished *Preston* because "Thornhill's prior acts were not just fantasy—they were actual crimes committed against an 11-year-old female

relative, and are therefore more similar to the charged offense." *Thornhill*, 940 F.3d at 1120.

In sum, while Ms. Leap's testimony about Mr. Goodwin's professed interest in child pornography may have been somewhat similar, the inflammatory details of the texts and conversations were not "strikingly similar" and should have been excluded under this factor.

2.      The remoteness of the acts

It is conceded that under this Court's case law the acts were not too remote to be excluded on that basis alone.

3.      The frequency of the acts

The prior conduct admitted in this case consisted of a few conversations and texts over an approximately one month period eight years before the instant charges.  This does not demonstrate sufficient frequency to support admission under this factor.  The Government's reliance on *Thornhill* belies the weakness in their argument on this factor.  (RB 20-21.)  There the prior acts occurred on a *number* of occasions over a *three* year period not long before the charged conduct in that case.  *Thornhill*, 940 F.3d att 1120.  In contrast, the alleged prior conversations here were limited to an isolated period of time in a month in 2009.

4.     The intervening circumstances

This factor should be considered neutral as there was no intervening acts of misconduct between the prior conduct and the current charges.

5.     The necessity of the evidence

The Government argues that the district court was correct in concluding that the evidence was "critical to the Government's case." (RB 23; ER 63.)  On the contrary, this evidence was not critical or even necessary.  The Government had significant forensic evidence as well as testimony that Mr. Goodwin had lied about the location of his phone when confronted by the police.  The Government's closing stated

> There is zero doubt that he was the owner of that phone.  There is zero doubt that he was the sole user of that phone.  There is zero doubt that he was the owner of those Gmail accounts and everything he was using was being uploaded in those accounts.

(ER-482.)

The testimony of Ms. Leap and the officer about the 2009 conversations was in no way necessary to the Government's case.  It was used to inflame the jury against Mr. Goodwin and to obtain a conviction based on the jury's emotional response to that evidence.  It is much easier to convict a person who would talk about raping young girls to produce babies to then abuse and who would

7

encourage another to abduct a child in a store to take pornographic pictures before

releasing the child.

> In closing, the prosecutor relied on this improper evidence:

> The Court has already admitted the 2009 evidence you heard
> yesterday.  That stuff when Miss Tia Cain, now Leap, came up here
> and testified about. Things that happened over 10 years ago.  But she
> was still brought to tears thinking about what the defendant wanted to
> do with the children she had in her care.  What the defendant wanted
> her to do to kids in Walmart.  And that was hard to listen to.  And it
> was hard to listen to, because it showed exactly what all the evidence
> shows in this case.

(ER 496.)

> The prosecutor then argued that the jury could use this in a

> broader scope.  . . . You can use it to determine that, hey, someone did
> this in the past, they are likely to do it again in the future.  That's the
> best factor in determining what's going to happen in the future is that
> past behavior. . . . Because he has a sexual attraction to children.
> Something that he is trying to satisfy, and he know no bounds.  It's
> not the fact ths it's his daughter that would stop him.  It's not the fact
> that it's a stranger in Indiana and telling her to go to Walmart that
> would stop him.

(ER 497.)

In essence, the Government's position is that any piece of evidence is

"necessary" if that evidence aids its case.  Here, the defense never raised any

specific defense other than a reasonable doubt argument as set forth in both his

opening and closing arguments.  The Government cites to several brief portions of

the record to argue that Mr. Goodwin presented an affirmative defense that he did

8

not take the photos. (RB 24.) However, in each instance, defense counsel was merely asking whether the prosecution witnesses could be 100% sure of their testimony; the defense did not call a single lay or expert witness to dispute the prosecution testimony.

Defense counsel asked a prosecution expert if the data he reviewed referenced a specific phone, rather than a particular model phone, and the expert acknowledged that all models of a phone would show the same information on the data, and thus from this particular data any of the millions of Samsung Galaxy S7's could have made the images. (ER-144-46, 312.) When another expert testified that he saw absolutely no evidence that the computer had been "hacked," defense counsel asked if it was possible that such hacking evidence had been deleted and the expert responded that he did not see any such evidence even in the deleted areas. (ER 211.) Defense counsel asked another expert if some images could have been "deleted and overwritten." (ER 363.) After admitting that such a situation was possible, the expert testified there was no such evidence in this case.

(ER 364.)[2]  Finally, defense counsel asked Ms. Tingey if other people might have been able to access her computer.  (ER 401-02.)

While these questions might have raised minor issues with one small part of the data examined by the experts, they were in no way sufficient to open the door to the totality of the inflammatory testimony from Ms. Leap.[3]

In closing argument, defense counsel relied primarily on a "reasonable doubt defense."

> Ladies and gentlemen, this -- I know this case hasn't been easy for you. It hasn't been easy for us. It certainly hasn't been easy for my client. And you wonder why are we even here? With all this evidence, why are we here? Wouldn't it have been easier for my client just to plead to something and avoid this whole trial?  The reason we're here

---

[2]In closing argument, defense counsel acknowledged that there was no hacking evidence, but argued it *might* be possible:

> And, yes, I'm aware that those images were found on his Galaxy S7 and not Karisa's, and they haven't found any others that it was involved in. But ladies and gentlemen, when the forensic witnesses were up -- we talked about this. And they had -- they found no evidence of any hacking in these devices or accounts. But they did say that it's possible. And that any traces of the hacking could have been overwritten. That's reasonable doubt, ladies and gentlemen.

(ER 509.)

[3]Nor does the fact that defense counsel in his written opposition to the admission of the search terms on the computer mention that others might have access to the computer (SER-9) justify the admission of Ms. Leap's testimony as the Government argues.  (RB 25.)  Indeed, the court excluded the use of the search terms precisely because others may have had access to the computer.  (ER 69-70.)

is because there is reasonable doubt. My client has denied
involvement.

(ER 512.)

None of defense counsel's questions or arguments provided a basis for the
2009 "rape" and "abduction" testimony the trial court admitted in the
Government's case-in-chief.

As to the trial court's ruling, the Government mistakenly argues that the
trial court's decision was merely a "preliminary" ruling. The trial court issued it
decision on the in limine motions barely a week before the trial began, without
hearing argument of the matter. Based on that ruling, the prosecutor in opening
statement made specific reference to the testimony from the 2009 matter which the
jury would hear in the case-in-chief. At that point, the die was cast and the court's
ruling was no longer a preliminary ruling.

While it is true that defense counsel raised a separate objection to the Ms.
Leap's testimony just prior to her taking the stand, that objection was not based on
the rule 403 grounds that had been adjudicated in the prior motions. In fact,
defense counsel acknowledged that the Court had already ruled on that ground.
Instead, defense counsel objected solely on relevance without making any detailed
argument to support his objection. The trial court denied that objection and
commented that it had already ruled on the 403 issue. (ER 407-409.)

Therefore, the trial court was not asked to and did not reconsider his prior
ruling based on what had subsequently occurred during the trial.

Finally, in a footnote, the Government asserts that the trial court did not
"rely" on the fact that the witness was coming from out of state. (RB, 24, n. 9.)
The Government's argument simply ignores the decision from the trial court

11

which specifically stated, "First, while there is no way to know whether Goodwin will actually make such an argument at trial, waiting until that time to make such a ruling is not feasible. TC lives in Indiana. The Court cannot wait until Goodwin asserts such a defense to determine whether TC will be allowed to testify on these matters—by then it will be too late." (ER 62.) Thus, the record is unequivocal that the potential inconvenience to the Government was indeed a key component of the trial court's ruling.

This highly inflammatory evidence denied Mr. Goodwin a fair trial and reversal of his convictions is warranted in this unusual case. The Government argues that any error was harmless because the evidence against Mr. Goodwin was so strong. But the Government cannot argue for admissibility at trial because the evidence was "necessary" to prove its case and then argue on appeal that in fact there was no necessity whatsoever to admit this same evidence. In essence, the Government argues that such emotional and inflammatory language can never be prejudicial when there was no attempt whatsoever to sanitize the nature of the prior evidence. The very purpose of the evidence was to overwhelm the jury with this emotional prejudicial evidence and the Government succeeded. Ms. Leap broke down and cried on the stand recounting her conversations and texts with Mr. Goodwin, even though he never acted on any of those matters and even though they occurred over a one month period ten years before she testified. No juror could have put aside this evidence when determining Mr. Goodwin's fate, especially since they were told that they could fully consider this evidence as evidence of guilt in their deliberations. Given the nature of this testimony, the error cannot be deemed harmless and reversal is required.

II.  THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT
THE CHARGE OF TRANSPORTING CHILD PORNOGRAPHY

The critical question for this Court is whether the mere movement of images from two accounts, both belonging to Mr. Goodwin, through the syncing of two devices used by him constitutes sufficient evidence to support a transportation charge.

The Government argues that the plain definition of "transport" applies because it means to carry or convey "from one place to another."  (RB 33.)  This is an overbroad definition of transport because it would criminalize carrying child pornography from one room in a home to another, or even carrying one's cell phone which contained child pornography as the person drove each day.

The cases relied upon by the Government are distinguishable because the transportation in those cases made the material *available to third parties* rather than the defendant himself.  (RB 33.)  Mr. Goodwin noted this distinction in his opening brief in regard to the case of *United States v. Fall*, 955 F.3d 333 (4th Cir. 2020.)  (Appellant's Opening Brief, hereinafter "AOB," 25-26.)   Nor did *United States v. Davis*, 859 F.3d 429 (7th Cir. 2017) address this issue because the sole challenge there to the transportation charge was based on a lack of evidence to show the defendant was the person who sent the materials.  The facts in *Davis* are significantly different from those here where there was "sharing" was only among Mr. Goodwin's private accounts.  In contrast, the defendant in *Davis* uploaded pornographic images to a public "share site," which allowed users to post images and then invite other Shutterfly users to view them, and also upload their own images was a form of transportation.  *Id*. at 432.  Such acts making the images available to others is clearly transportation of those images.

13

Yet again, in *United States v. Phipps*, 523 F. App'x 498 (9th Cir. 2013), the evidence presented at trial contained an email sent from the defendant to another person; it was not a case of the defendant sharing the images among his own devices or accounts.[4]

The Government does not contend that the images were sent to another person, only that Mr. Goodwin either intentionally sent them to his own accounts or knew that the images would be automatically backed up to his own accounts. (RB 34-35.) As such, this evidence is insufficient to support the transportation conviction.

### III. THE TRIAL COURT'S SENTENCE OF 100 YEARS WAS NOT REASONABLE

The Government argues that a "life" sentence of 100 years imposed by the district court was "reasonable." (RB 38.) There is no dispute that based upon the conduct found by the jury a substantial sentence was warranted in this case. (RB 39.) But there is a great difference between a substantial sentence that would have incarcerated Mr. Goodwin for at least 35 years until he was approximately 70 years old and an unreasonable sentence that would have him die in prison.

The Government first argues that the court properly sentenced him for his acts, but then relies on a number of cases in which "life" sentences were imposed

---

[4]The evidence presented at the trial in *Phipps* was that the defendant emailed the pornography to another person. See, Ninth Circuit Case No. 12-50222, Dkt. 13, p. 14.

for defendants who had molested children in addition to taking or possessing child pornography. (RB 39-40.) In *United States v. Sarras*, 575 F.3d 1191, 1196 (11th Cir. 2009), the defendant "had sexual intercourse with [his step-daughter] more than ten times, performed oral sex on her about three times, and had her perform oral sex on him more than ten times." In *United States v. Johnson*, 451 F.3d 1239, 1241(11th Cir. 2009), the defendant began a sexual relationship with a minor "when the victim was 8. The sexual activity continued for about six years and the incidents were 'too many to count.' Victim 1 reported that when he was about 9 years old, [the defendant] introduced him to two other adult men for sexual purposes. Victim 1 said he was given drugs by one or more of the men to induce him into having sex."

Similarly, the conduct in the unpublished decisions relied upon by the Government is far greater than the acts committed in this case. (RB 40, n. 16.) In *United States v. Thurman,* 494 F.App'x 828 (9th Cir. 2012), the defendant was actively engaged with another person in the sexual exploitation of minors for the the production of child pornography. In *United States v. Fox*, 357 F. App'x 64 (9th Cir. 2009), the defendant engaged in taking sexually explicit photos a neighbor child over a several year period of time. At sentencing, the defendant furthermore asked the court to impose the death penalty because of his own

"admission that he could not be stopped."[5]  In light of these circumstances, this Court held a 110 year sentence was not unreasonable.

In contrast, Mr. Goodwin's conduct was primarily close in time, involved the taking and attempted taking of pornographic photos over a short period of time in 2017, and his conviction for transportation, if sustained on appeal, was for sending photos to himself.

The Government argues that this Court should completely ignore the Government's decision to file a new indictment separating out the charges originally contained in the prior indictment. (RB 40-41.)  First, the Government does not challenge Mr. Goodwin's claim that before the last indictment, he was facing a maximum possible sentence of 100 years, the sentence finally imposed by the district court.

Second, the Government relies on two cases which do not involve any sentencing issue.  (Rb 40-41.)  Neither *United States v. Heldt,* 745 F.2d 1275 (9th Cir. 1984) nor *United States v. Allsup*, 573 F.2d 1141 (9th Cir. 1978) involves the question of how a court at sentencing should consider the charging decisions by the Government. They merely held that increasing charges before trial is not an act

---

[5]See, Appellant's Brief in *United States v. Fox,* 9th Cir. case No. 08-30387, Dkt. 4, p. 24 ["The defendant] allocuted, asking for the death penalty for himself.*"*

of vindictive prosecution;  Mr. Goodwin already conceded as much in his opening brief.  (AOB p. 28, n. 7.)

The question for this Court is whether it should consider in assessing the reasonableness of the sentence the fact that the same conduct before the last indictment was 100 years; however, the new indictment increased that maximum penalty to 320 years.  This Court must decide whether the particular charging by the Government in this case should be considered in the reasonableness of the sentence.  In light of the other factors set forth in the opening brief, the totality of circumstances warrants reversal and remand for a new sentencing hearing.

## CONCLUSION

For the foregoing reasons and those contained in the opening brief, it is respectfully requested that this Court reverse appellant's convictions and remand for a new trial; in the alternative, if this Court affirms the convictions, it is requested that this Court remand for a new sentencing hearing.

Dated: May 24, 2021.

Respectfully submitted by,

s/ Andrew Parnes
Andrew Parnes
Attorney for Defendant/Appellant

17

**CERTIFICATION PURSUANT TO CIRCUIT RULE 32-1**

Pursuant to Ninth Circuit Rule 32-1 and Fed. R. App. P.32(a)(7)c, I certify

that the attached opening brief is proportionateley spaced, has a typeface of 14

points or more and contains 4255 words.

DATED: May 24, 2021.

/s/ Andrew Parnes
Andrew Parnes

## CERTIFICATION OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 24, 2021.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants are not registered CM/ECF users.  I mailed the foregoing document by First-Class Mail, postage prepaid, to the following non-CM/ECF participant on May 24, 2021

      Lex Bennett Goodwin, #19479-023
      USP Terre Haute
      U.S. Penitentiary
      P.O. Box 33
      Terre Haute, IN  47808

      s/Andrew Parnes
      Andrew Parnes